691 P.2d 716

**Howard WASSERMAN and Harold Archer, Plaintiffs-Appellants,**

**v.**

**J. Michael LOW, Director of the State Department of Insurance of the State of Arizona, Defendant-Appellee.**

**Nos. 1 CA–CIV 6347, 1 CA–CIV 6383.**

Court of Appeals of Arizona, Division 1, Department C.

June 12, 1984.

Reconsideration Denied Aug. 9, 1984.

Review Denied Dec. 4, 1984.

Marvin Johnson, P.C. by John P. Otto, Phoenix, for appellants.

Robert K. Corbin, Atty. Gen. by Patrick M. Murphy, Chief Counsel, Financial Fraud Div., and Michael W. Sillyman and Timothy M. Hogan, Asst. Attys. Gen., Phoenix, for appellee.

## OPINION

CONTRERAS, Presiding Judge.

The appellants had their respective licenses to sell insurance revoked following administrative hearings in which videotape interceptions were admitted in evidence. These revocations were upheld by the superior court. At issue in this appeal is whether certain videotape interceptions fall within the provisions of 18 U.S.C. § 2511(2)(d) of the Federal Wiretap Act, whether disclosure of those interceptions constitutes a violation of the Act and whether the absence of a seal on the tapes was in violation of the Act, so that the videotape interceptions should have been suppressed at the administrative hearings in which appellants' licenses to sell insurance were revoked. We conclude that the exemption under that subsection of the statute does apply, that the disclosure of the videotape interceptions did not constitute a violation of that Act, and that no seal was required. Accordingly, we affirm.

## FACTS

During the relevant time period appellants Wasserman and Archer were licensed insurance salesmen. The majority of insurance policies sold by both appellants during this period were medicare supplement insurance policies. These are policies designed for the elderly to offset the rising cost of health care by providing an insurance supplement to medicare insurance coverage. Based upon complaints and other information received by the Department of Insurance, the Director of that department initiated an investigation into abuses that had been reported in the sale of medicare supplement insurance policies to the elderly. As part of that investigation, the Department of Insurance collaborated with KPNX–TV in the television station's independently initiated investigation into the sales practices of insurance agents.

Mrs. Lockwood, a 72 year old member of the Grey Panthers and a member of the Arizona Association of Retired Persons, agreed to assist in the investigation of the conduct of various insurance agents selling medicare supplement insurance policies to the elderly in Maricopa County. As part of this investigation, Mrs. Lockwood was provided with a list of names of various insurance agents under investigation. She proceeded to contact the offices of a number of these agents and requested that the agents come to her home to make a sales presentation of their medicare supplement insurance policies. Several agreed to do so and she set up individual appointments with each. She also consented to have KPNX–TV install equipment (audio and video) in her apartment which was capable of recording conversations with individuals present in her apartment. This equipment was concealed.

On March 26, 1980, in response to Mrs. Lockwood's invitation, appellant Wasserman gave his sales presentation to her at her apartment. On or about April 7, 1980, appellant Archer, also in response to Mrs. Lockwood's invitation, made his sales presentation of the same type of policy. At the time of their sales presentations, neither appellant knew that videotape and audio equipment had been set up in Mrs. Lockwood's apartment by KPNX–TV. The entire conversations between Mrs. Lockwood and each of the insurance salespeople were recorded on equipment that had been hidden behind a two-way mirror in Mrs. Lockwood's apartment.

Through the use of audio and video tape it was shown that specific misrepresentations concerning the medicare supplement policies were made by each appellant during his sales presentation. These misrepresentations included, among others, false statements concerning the extent of coverage, false statements concerning the effective date of coverage, and false statements concerning the dollar amount of coverage. In addition, appellant Wasserman, upon re-

viewing a Mutual of Omaha policy, which Mrs. Lockwood showed to him as her existing medicare supplement insurance policy, falsely represented that the Mutual of Omaha policy provided less coverage than that offered by the Christian Heritage policy which he was promoting.

At the time these recordings were made, a representative from the Department of Insurance was also present in Mrs. Lockwood's apartment but he was in the bedroom and had no opportunity to observe the discussions between Mrs. Lockwood and the various insurance agents. From the record it is not clear what purpose was served by his mere presence in her apartment. His presence is not germane. The Department of Insurance was aware that KPNX–TV planned to televise the tapes in its commercial telecasts. Following the videotaping, the tapes were turned over to the Department of Insurance for use in administrative hearings. KPNX–TV subsequently aired programs from edited portions of these tapes in five segments, including an hour long Sunday special.

Two separate disciplinary hearings of the Arizona State Department of Insurance were held. Both appellants Wasserman and Archer were charged with materially misrepresenting the coverage of Christian Heritage medicare supplement insurance policies to elderly persons. Appellants filed motions to suppress the videotapes with the Department of Insurance. These motions were denied and the hearings proceeded. The videotape evidence obtained from KPNX–TV was introduced at both hearings and appellants were questioned about the various misrepresentations the tapes showed them making to Mrs. Lockwood.

Appellant Archer was found to have willfully misrepresented medicare supplement insurance policies to Mrs. Lockwood and to Edith and William Phillips and his license to sell was revoked on February 3, 1981. Appellant Wasserman was found to have willfully misrepresented medicare supplement insurance policies to Mrs. Lockwood and to Mr. and Mrs. William Brizzee and

his license to sell insurance was revoked on February 3, 1981. These revocations were based in substantial part on the videotape evidence provided by the television station.

Appellants Archer and Wasserman, in separate actions, appealed the revocations of their insurance licenses to the Superior Court of Maricopa County in an effort to overturn their respective license revocations. They asked that the denials of their motions to suppress the videotape evidence be reversed based upon alleged violations of the Federal Wiretap Act. After submission of briefs and oral argument, the revocations of appellants' insurance license were upheld by the trial court.

In each appeal, it was determined that, under the facts and circumstances of the particular case, the intercepted communications were exempt from the provisions of the Federal Wiretap Act under 18 U.S.C. § 2511(2)(d). Because of the exemption, it was held in both appeals that appellants' motions to suppress the use of the videotape evidence in the administrative hearings were appropriately denied. Both cases have been consolidated on appeal before this court.

## ISSUES

Appellants' contention, that the videotape evidence should have been suppressed in the administrative hearings, requires consideration of several issues which have been properly raised. They are the following:

(1) Whether the interceptions were for an injurious purpose and therefore were not exempt from the interception prohibitions of the Federal Wiretap by virtue of the consensual interception exemption of 18 U.S.C. § 2511(2)(d) so that the tapes should have been suppressed under 18 U.S.C. § 2515;

(2) Whether the disclosure of the videotapes by KPNX–TV constituted a violation of the Federal Wiretap Act under 18 U.S.C. § 2511(2)(a)(ii)(B) so that the videotapes and evidence derived from them should have been suppressed under 18 U.S.C. § 2515;

(3) Whether disclosure of the tapes with the permission of the Director of Insurance violated the provisions of the Federal Wiretap Act under 18 U.S.C. § 2517 so that the videotapes should have been suppressed at the administrative hearing under 18 U.S.C. § 2515; and

(4) Whether the Federal Wiretap Act required that the videotapes be sealed or an explanation given for the absence of a seal before such tapes could be admitted into evidence pursuant to 18 U.S.C. § 2518(8)(a).

## THE ACT

The Federal Wiretap Act, 18 U.S.C. § 2510–2520.[1] prohibits the interception, use or disclosure of oral or wire communications. This statute applies to all forms of electronic recording and surveillance. The contents of any intercepted wire or oral communication and any evidence derived therefrom is not admissible evidence if disclosure of that information would be in violation of the Act. 18 U.S.C. § 2515.

In both appeals below, the Federal Wiretap Act was found to be applicable to the videotape interceptions of appellants' conversations with Mrs. Lockwood. In addition, in both causes, the exemption from the Federal Wiretap Act, for persons acting under color of law, as contained in 18 U.S.C. § 2511(2)(c), was held to be inapplicable to the interceptions under the facts presented. Those determinations have not been appealed and will therefore be assumed to have been properly decided for purposes of this appeal. It was determined in both cases, however, that the consensual interception exemption of 18 U.S.C.

§ 2511(2)(d) was applicable. That statutory section reads as follows:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

The superior court, in each appeal, affirmed the administrative hearing officer's ruling that the videotape evidence and evidence derived from it fell within this exemption and therefore was properly received in evidence at the license revocation hearings.

■ Appellants argue that the videotape interception does not meet the exemption requirements of 18 U.S.C. § 2511(2)(d). In the absence of that exemption, appellants contend that the videotape recordings were obtained in violation of the Federal Wiretap Act and, therefore, were not admissible in evidence at the administrative hearings by virtue of 18 U.S.C. § 2511(1)(c), (d) and § 2515. Appellee appears to concede that if the exemptions under 18 U.S.C. § 2511(2)(c) and (d) do not apply, the interceptions in question would have been obtained in violation of the Federal Wiretap Act. 18 U.S.C. § 2511(1)(c) and (d) *prohibit* the *disclosure or use* of the contents *of any communication intercepted in violation* of the Act.[2] A disclosure is unlawful under § 2511(1)(c) only when the informa-

---

**1.** 18 U.S.C. §§ 2510–2520 were enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968, Pub.L.No. 90–351, 82 Stat. 197.

**2.** 18 U.S.C. § 2511(1)(c) and (d) provides:
(1) Except as otherwise specifically provided in this chapter any person who—
 * * * * *
 (c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was

obtained through the interception of a wire or oral communication in violation of this subsection; or
 (d) willfully uses, or endeavors to use, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;
shall be fined not more than $10,000 or imprisoned not more than five years or both.

tion disclosed was obtained through an unlawful interception. *Zerilli v. Evening News Ass'n.*, 628 F.2d 217 (D.C.Cir.1980). As previously stated, 18 U.S.C. § 2515 *prohibits* the *use in evidence of* any intercepted wire or oral *communication* or evidence derived therefrom *if* the *disclosure would be in violation* of the Act.[3] Thus, if the exemptions do not apply, the interceptions and, therefore, the disclosures, would be in violation of the Act and the videotapes could not be admitted into evidence at the administrative hearing. Since appellee has not, by way of cross appeal, appealed from the finding below that 18 U.S.C. § 2511(2)(c) (exemption for persons acting under color of law) does not apply to the facts and circumstances of this case, we need not consider that subsection. Accordingly, we will now consider whether the consensual interception exemption under 18 U.S.C. § 2511(2)(d) applies.

## THE CONSENSUAL INTERCEPTION EXEMPTION

Under 18 U.S.C. § 2511(2)(d), the consensual interception exemption (for persons not acting under color of law) applies only if the interceptions were not "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act." Therefore, it is necessary to determine the "purpose" of the interception in order to determine whether the exemption is applicable.

**The** burden of proving that an interception was unlawful because it was made for a purpose which constitutes an "injurious act" lies with the party claiming that the interception was unlawful. *See By-Prod Corp. v. Armen-Berry Co.*, 668 F.2d 956 (7th Cir.1982); *United States v. Phillips*, 540 F.2d 319 (8th Cir.1976) *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976); *United States v. Bryson*, 418 F.Supp. 818 (W.D.Okla.1975). Appellants' opening brief argues only that the interception in this case was for the purpose of publicly embarrassing them and that public embarrassment constitutes an "injurious act" under 18 U.S.C. § 2511(2)(d).[4] They argue that the purpose of the video taping was to permit KPNX–TV to present on commercial television an "expose aimed at insurance sales and that Mrs. Lockwood knew from the beginning that the television planned to put the video and audio recording on television." They claim that this use was exactly the sort of activity sought to be prevented by the "injurious act" limitation to the consensual recording exemption under § 2511(2)(d). They claim that the creation of these tapes was in direct violation of that statute and the tapes, therefore, should have been suppressed.

In making this claim, appellants argue that Mrs. Lockwood's purpose in consenting to and participating in the interception was to commit the "injurious act" of publicly embarrassing appellants. They point out that she acknowledged that the televising of tapes showing appellants fraudulent-

3. 18 U.S.C. § 2515 provides:
 Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

4. We note that appellants' reply brief purports to present an argument that the interceptions involved in this case amounted to a tortious invasion of privacy. This issue was not present-

ed in appellants' opening brief as required by Rule 13(a), Arizona Rules of Civil Appellate Procedure. An issue first raised in a reply brief will not be considered on appeal. *United Bank v. Mesa N.O. Nelson Co., Inc.*, 121 Ariz. 438, 590 P.2d 1384 (1979); *Camelback Contractors, Inc., v. Industrial Commission*, 125 Ariz. 205, 608 P.2d 782 (App.1980); Rule 13(c), Arizona Rules of Civil Appellate Procedure. Appellants also attempted, in oral argument before this court, to argue that the interceptions here constituted criminal acts. Again, an issue not raised and argued in appellants' opening brief will be considered as abandoned on appeal. *See, DeElena v. Southern Pacific Co.*, 121 Ariz. 563, 592 P.2d 759 (1979).

ly misrepresenting the coverage and benefits of the medicare supplement insurance policies would be publicly embarrassing to them. In addition, they argue that David Page, the investigative reporter for KPNX–TV, knew that any program airing the videotape interception would be publicly embarrassing to the insurance agents involved.

The record shows however, that Mrs. Lockwood's and KPNX–TV's purpose in recording the conversations was not to publicly embarrass the agents. In her deposition, Mrs. Lockwood stated that she participated in the interception out of a desire to prevent the exploitation of elderly persons by unscrupulous insurance agents. It was her desire to help determine the sales practice techniques of insurance agents who sold medicare insurance supplements. Mr. Page's deposition indicates that his investigation was for the purpose of determining abuses by insurance agents in the medicare supplement insurance market place. He wanted "to accurately document how medicare supplement insurance has been sold to see if in fact the abuses claimed by some did take place. If, as a result of the information, [they] discovered someone's reputation was going to be brought into a harsh light, it was not in any way the primary consideration to go ahead with the project." In addition, both had agreed that the tapes would be turned over to the Department of Insurance for use as evidence in administrative hearings.

■ We specifically note that congress did not define the term "injurious act" under § 2511(2)(d) of the Federal Wiretap Act. The limitations by sub-section (2)(d) upon the otherwise complete exemption of consensual wiretapping and eavesdropping from the Act, were added in an amendment to that sub-section. The amendment, as evidenced by its legislative history, was intended to prohibit interceptions, otherwise protected under that sub-section, when the consenting party acted with intent to injure the non-consenting party to the conversation. The examples provided by Senator Hart, a sponsor of the amendment, were those situations where one party intercepts the communication for the purpose of blackmailing, threatening and publicly embarrassing the non-consenting party. Senator Hart acknowledged that the exemption would not prohibit the consenting party from " 'recording in other situations when the party acts out of a legitimate desire to protect himself and his own conversations from later distortion or other unlawful or injurious uses by the other party.' " *Meredith v. Gavin*, 446 F.2d 794, 798–799 (8th Cir.1971), footnote 5 quoting 114 Cong.Rec. 14694–14695 (May 23, 1968).

In cases where the question has been presented, it has been stated that the scope of an "injurious act" must be determined on a case by case basis. *Moore v. Telfon Communications Corp.*, 589 F.2d 959 (9th Cir.1978); *United States v. Phillips, supra; Meredith v. Gavin, supra.* In discussing the term "injurious act" under the Federal Wiretap Act, the Eighth Circuit Court of Appeals stated that:

it seems apparent from the context in which the statute was enacted that the sort of conduct contemplated was an interception by a party to a conversation with an intent to use that interception against the non-consenting party in some harmful way and in a manner in which the offending party had no right to proceed.

*Meredith v. Gavin*, 446 F.2d at 799. In that case, the use of the recording for impeachment purposes was found not to have violated the Federal Wiretap Act because the consenting party's intention was to protect his position and to use the recording for impeachment in a workmen's compensation proceeding. His intent was therefore not to harm the non-consenting party, so the purpose of the recording was not the sort of "injurious act" which the Federal Wiretap Act sought to condemn. It has also been held that where an interception is made for the purpose of obtaining a record of what was said in order to protect the intercepting parties to the conversation and guard against possible future

distortion, the interception was not made for the purpose of committing any criminal, tortious or injurious act within the meaning of 18 U.S.C. § 2511(2)(d). *United States v. Phillips,* 564 F.2d 32, 33–34 (8th Cir.1977), *cert. denied,* 435 U.S. 974, 98 S.Ct. 1620, 56 L.Ed.2d 67 (1978).

In a recent case before the Ninth Circuit Court of Appeals, a franchisee sued its franchisor for federal wire tapping violations. The franchisor had recorded conversations which demonstrated that the franchisee was threatening extortion. The franchisor terminated the franchise agreement. In that case, the plaintiff argued that regardless of whether the recording was for properly or improperly terminating the franchise, it constituted an "injurious act." The court ruled that the interception of a conversation by one party to the conversation for the purpose of documenting threats of extortion, did not constitute the commission of an "injurious act" under 18 U.S.C. § 2511(2)(d). The court stated:

> Congress did not define the meaning of "injurious act." While we acknowledge that the term embraces acts not easily classified as either "criminal" or "tortious" we cannot believe that Congress intended it to be read to embrace every act which disadvantages the other party to this communication. Such a reading would nullify the exemption created by § 2511(2)(a)(d). Presumably, there is some disadvantage in having any conversation intercepted in the absence of consent of all parties. Congress, we believe, intended to permit one party to record conversation with another when the recorder is acting "out of a legitimate desire to protect himself" (footnotes omitted).

*Moore v. Telfon Communications Corp.,* 589 F.2d at 965–66.

■ The public embarrassment which appellants may have suffered was certainly not the "purpose" for which the interceptions were made. We are of the opinion that recording acts of misrepresentation and protecting and preserving the credibility of the other party to the conversation (Mrs. Lockwood), are appropriately exempted purposes. We conclude that appellants have fallen short of their burden of proving that the videotape interceptions were made for a criminal, tortious or other injurious purpose. Therefore, the lower court rulings that the videotape interceptions of appellants' insurance sales presentations fall within the exemption of 18 U.S.C. § 2511(2)(d) of the Federal Wiretap Act are affirmed.

## UNLAWFUL DISCLOSURE BY A COMMUNICATION CARRIER

Appellants' second claim is that 18 U.S.C. § 2515 prohibits admission of the videotapes into evidence because the disclosure of the tapes by the television station violated 18 U.S.C. § 2511(2)(a)(ii)(B).[5] Appellants

---

5. 18 U.S.C. § 2511(2)(a)(ii)(A) and (B) provides: Notwithstanding any other law, communication common carriers, ... are authorized to provide information, facilities, or technical assistance to persons authorized by law to intercept wire or oral communications or to conduct electronic surveillance, as defined in section 101 of the Foreign Intelligence Surveillance Act of 1978, if the common carrier, ... has been provided with—

 (A) a court order directing such assistance signed by the authorizing judge, or

 (B) a certification in writing by a person specified in section 2518(7) of this title or the Attorney General of the United States that no warrant or court order is required by law, that all statutory requirements have been met, and that the specified assistance is required, setting forth the period of time during which the provision of the information, facilities, or technical assistance is authorized and specifying the information, facilities, or technical assistance required. No communication common carrier, ... shall disclose the existence of any interception or surveillance or the device used to accomplish the interception or surveillance with respect to which the person has been furnished an order or certification under this subparagraph, except as may otherwise be required by legal process and then only after prior notification to the Attorney General or to the principal prosecuting attorney of a State or any political subdivision of a State, as may be appropriate. Any violation of this subparagraph by a communication common carrier ... shall render the carrier liable for the civil damages provided for in section 2520. No cause of action shall lie in any court against any communication common carrier, ... for providing information, facilities, or assistance in accordance

assert that § 2511(2)(a)(ii)(B) prohibits communication carriers, such as KPNX–TV, from disclosing the existence of any interception or surveillance except as required by legal process after prior notification to the Attorney General or the prosecuting attorney of the political subdivision involved. We strongly disagree. A simple reading of 18 U.S.C. § 2511(2)(a)(ii)(B) shows that this assertion is completely unfounded. That subsection, by its own terms, prohibits communication carriers from disclosing interception or surveillance information "with respect to which the person has been furnished an order or certification under this subparagraph." There is no claim here that the videotaping of appellants' conversations by KPNX–TV was done under the auspices of a court order or a written certification. The existence of a warrant or court order is not an issue in this case.

■ It is clear from the language of 18 U.S.C. § 2511(2)(a)(ii)(A) and (B) that it was not intended to apply to the videotaping at issue here. In construing the meaning of a statute, the language of the statute itself is ordinarily regarded as conclusive. *United States v. Mehrmanesh*, 689 F.2d 822 (9th Cir.1982); *Ruiz v. Morton*, 462 F.2d 818 (9th Cir.1972), aff'd., 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). A court must give effect to a statute's unambiguous meaning. *State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304 (1983). *See*, e.g., *Lewis v. United*

*States*, 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980).

■ In addition, in 1972, the Arizona Supreme Court interpreted the provisions of 18 U.S.C. § 2515 in conjunction with the interception and disclosure prohibitions of 18 U.S.C. § 2511. The court held that when the two sections are read and interpreted together, they "mean that the contents of a message may not be received in evidence *if* the message was *intercepted* in violation of the statute (emphasis added)." *State v. Ford*, 108 Ariz. 404, 412, 499 P.2d 699, 707 (1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 950, 35 L.Ed.2d 261 (1973). *See also Zerilli v. Evening News Ass'n., supra; Smith v. Cincinnati Post & Times-Star*, 475 F.2d 740 (6th Cir.1973); *Meredith v. Gavin, supra*. Thus, since the interceptions were exempted from the statute's prohibitions by virtue of § 2511(2)(d) (as consensual interceptions), the subsequent disclosures of the videotapes by the television station could not render the tapes inadmissable under § 2515.

## UNLAWFUL DISCLOSURE BY THE DIRECTOR

■ Appellants' third claim that § 2515 prohibited admission of the videotapes into evidence, is based upon their assertion that the Director of the Department of Insurance was prohibited from disclosing the interceptions under 18 U.S.C. § 2517.[6]

with the terms of an order or certification under this subparagraph.

**6.** 18 U.S.C. § 2517 provides:

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom may use such contents to the

extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

(4) No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or

They make this claim while "[a]ssuming arguendo that the state was in control of the vidiotaping (sic) investigation ...." They claim that "the state would and should have been able to prevent disclosure of the recordings via KPNX–TV if what they had done was under the 'color of State law' ". This argument is also without merit since it is based upon an assumption which was found to be untrue below. Since there has been no appeal from the ruling that the interceptions were not made under color of state law, appellants cannot make such argument here on that basis.

 In any event, appellants' reliance on 18 U.S.C. § 2517 as the grounds for their argument of unlawful disclosure of the videotape evidence is misplaced. That statutory section authorizes disclosures, it does not restrict disclosures. Subsections 1, 2 and 5 of that section pertain to "any investigative or law enforcement officer." The pertinent definition of an "investigative or law enforcement officer" is "any officer ... who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter [the Federal Wiretap Act] ...." 18 U.S.C. § 2510(7). Appellee, as Director of the State Department of Insurance, is not empowered to conduct investigations of or to make arrests for offenses enumerated in the Federal Wiretap Act.[7] Those subsections, therefore, are not applicable to any disclosure which appellee may have made.

 Subsection 4 protects the privileged character of any otherwise privileged communication. Subsection 3 merely permits disclosure of information obtained by any authorized means by any person "while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof." Thus, § 2517 does not prohibit the disclosures and will not operate to bar evidence derived from the interceptions from admission into evidence under § 2515. In any case, as discussed above, § 2511(2)(d) exempts consensual interceptions from the act so that a subsequent disclosure will not render the tapes inadmissible under the act.

## REQUIREMENT OF A SEAL

Appellants' final claim with regard to the videotape interceptions is that the Federal Wiretap Act requires even consensually intercepted communications to be sealed. Since the videotapes in this case were not sealed, appellants argue that the tapes cannot be used or disclosed under 18 U.S.C.

---

oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

7. 18 U.S.C. § 2510(7) provides:
"Investigative or law enforcement officer" means any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses.

The enumerated offenses referred to in § 2510(7) and applicable to a state officer, appear to be those listed in 18 U.S.C. § 2516(2) which provides that, upon proper application, a state court judge of competent jurisdiction may authorize or approve:
the interception of wire or oral communications by investigative or law enforcement officers having responsibility for the investigation of the offense as to which the application is made, when such interception may provide or has provided evidence of the commission of the offense of murder, kidnapping, gambling, robbery, bribery, extortion, or dealing in narcotic drugs, marihuana or other dangerous drugs, or other crime dangerous to life, limb, or property, and punishable by imprisonment for more than one year, designated in any applicable State statute authorizing such interception, or any conspiracy to commit any of the foregoing offenses.
The powers and duties of the Director of the Department of Insurance do not include investigation of any of the offenses listed in § 2516(2). See A.R.S. § 20–141 et seq.

§ 2517(3). Appellants refer to 18 U.S.C. § 2518(8)(a) in support of their claim. That section in pertinent part reads as follows:

Immediately upon the expiration of the period of the order [issued by a judge of competent jurisdiction authorizing or approving the interception of an oral communication] ..., such recordings shall be made available to the judge issuing such order and sealed under his directions....

Section 2518 obviously does not refer to recordings which are not made pursuant to court order. As stated by the Fifth Circuit Court of Appeals in *United States v. Head*, 586 F.2d 508, 513 (5th Cir.1978):

where no judicial order is involved, there is no identifiable judge to direct the sealing. Furthermore, 18 U.S.C. § 2511(d) exempts from the operation of the entire chapter, of which § 2518 is a part, consensual recordings such as made here. Defendant's contention [that consensual tape recordings were required to be sealed in accordance with 18 U.S.C. § 2518(8)(a)] is frivolous.

■■■ The sealing requirements of the Federal Wiretap Act pertain only to recordings made pursuant to and authorized by judicial order. They have no application to consensual interceptions which do not require judicial authorization. *See United States v. Mendoza*, 574 F.2d 1373 (5th Cir. 1978), *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1978).

## SUMMARY

By way of summary, we have concluded that appellants have failed to meet their burden of proving that the participants in the videotape interception engaged in criminal, tortious or injurious acts. The videotape interceptions, under the facts and circumstances of this case, and as determined by the hearing officer and the superior court below, were consensual and clearly exempt under 18 U.S.C. § 2511(2)(d). Since the interception was lawfully obtained, use of the videotape evidence in the Department of Insurance hearings was not prohibited under the statute. We have also concluded that neither U.S.C. § 2511(2)(a)(ii)(A)

and (B), dealing with communication common carriers, nor 18 U.S.C. § 2517, dealing with disclosures by law enforcement officials, apply to the facts of this case. We have further concluded that consensual interceptions are not the subject of the sealing requirements of 18 U.S.C. § 2518(8)(A).

For the foregoing reasons, the judgments in the superior court, affirming the Department of Insurance orders revoking appellants' licenses to sell insurance, are affirmed.

HAIRE and GREER, JJ., concur.