780 P.2d 401

**ALHAMBRA SCHOOL DISTRICT, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Cecil Patterson, a judge thereof, Respondent Judge,**

**Brenda NICHOLS, a minor, By and Through her father, Russell NICHOLS; Russell Nichols, individually; and Louise Klein, Real Parties in Interest.**

No. 1 CA–SA 88–270.

Court of Appeals of Arizona, Division 1, Department C.

May 16, 1989.

Review Granted Oct. 31, 1989.

Teilborg, Sanders & Parks by John C. Gemmill, Alison Lewis and Jean E. Huffington, Phoenix, for petitioner.

Langerman, Begam, Lewis & Marks, P.A. by Elliot G. Wolfe and Samuel Lan-

german, Phoenix, for real parties in interest.

## OPINION

SHELLEY, Presiding Judge.

The issue presented in this special action proceeding involves injuries suffered by the respondent plaintiff when she was struck by a motor vehicle in a marked school crossing on October 16, 1986.

Alhambra School District (District) is an elementary school district located in Phoenix, Arizona, consisting of nine elementary schools, one of which is Cordova Elementary School. The school abuts on 35th Avenue in Phoenix.

An abutting crosswalk to the Cordova School was established at the intersection of 35th Avenue and Montebello Street, pursuant to the provisions of A.R.S. § 28–797, through an agreement between the City of Phoenix and the District. The agreement was based on an application for *an abutting school crossing*. The application stated: "In event of approval and subsequent establishment by markings and appropriate signs, the undersigned school authority agrees to administer all duties as prescribed in Section 28–797 of the Arizona Revised Statutes, and to operate the crossing in conformance to the Arizona School Crossing Manual as adopted by the Arizona Highway Commission July 7, 1965."

The application was approved with the condition that: "the portable signs will be in place within the roadway between 7:45 AM and 4:00 PM during all days *the* school is in session." (Emphasis added.) The District did not place the portable crossing signs in the crosswalk until 7:50–8:00 a.m., and the crossing guard did not arrive at the crosswalk until 8:00 a.m. on October 16, 1986.

The Cordova school principal knew prior to October 16, 1986, that Cordova school children who attend the school's 7:45 a.m. breakfast program and other activities used the crosswalk before signs were placed and the guard was on duty.

Brenda Nichols had attended Cordova Elementary School during the 1985–86 school year. In August 1986, she enrolled as a student at Alhambra High School, which is part of the Phoenix Union High School District. On October 16, 1986, she was walking from her home to the home of a friend to get a ride to Alhambra High School. During that walk she crossed 35th Avenue at the marked abutting school crosswalk at the intersection of Montebello and 35th Avenue. For the purpose of the motion for summary judgment, it was assumed that the crossing occurred sometime between 7:45 a.m. and 8:00 a.m. and prior to the placement of the portable signs and the attendance of the guard. While crossing, she was struck by a car, resulting in serious injuries. On October 16, 1986, at least one other Cordova student, who attended the breakfast program, had already crossed prior to the time that Brenda Nichols was in the crosswalk.

The real parties in interest sued the District, alleging negligence in failing "to adequately sign, guard and/or supervise the school's crossing ... so as to make it reasonably safe for ordinary pedestrian traffic." The District moved for summary judgment, asserting that it did not owe a duty of care to Brenda Nichols. The motion for summary judgment was denied. The District then filed this special action, alleging that the respondent judge abused his discretion in denying the motion for summary judgment.

The real parties in interest assert that this court should not exercise special action jurisdiction to review a denial of a motion for summary judgment. In the case of *Scottsdale Jaycees v. Superior Court of Maricopa County*, 17 Ariz.App. 571, 573, 499 P.2d 185, 187 (1972), this court stated:

> Generally, we are reluctant to accept jurisdiction in this type of situation and have previously indicated that our review of denials of motions for summary judgment will be sparingly exercised. However, where the trial court has determined that no genuine dispute exists as to the material facts, where additional costs and expense will result to both parties if a trial occurs and our ruling on

the issue presented will effectively terminate the litigation, and where there exists a general public interest such as determining the liability of charitable organizations for its travelling membership, we deem it appropriate to accept jurisdiction.

(Citation omitted.)

In this case, the trial court has determined that no genuine dispute existed in the material facts. It is apparent that substantial additional costs and expenses will result to both parties if a trial occurs, whereas our ruling on the issue presented will effectively terminate the litigation without incurring additional costs and expenses. This case is of general public interest to school districts throughout the state. For the foregoing reasons, we deem it appropriate to accept jurisdiction.

■ The only issue in this case is whether or not the District owed a duty to Brenda Nichols while she was using the crosswalk. The real parties in interest posit that the District had a common law duty to act as a reasonable, prudent school district would have acted under the circumstances.

As a prerequisite in a negligence action, a plaintiff must establish that defendant owed the plaintiff a duty of care. The court, rather than the jury, decides whether or not a duty exists. If no duty exists, the defendant is not liable for a plaintiff's injuries, even though the defendant *may* have acted unreasonably in light of the foreseeable risk. *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985).

In the case of *Western Technologies, Inc. v. Sverdrup & Parcel, Inc.*, 154 Ariz. 1, 3, 739 P.2d 1318, 1320 (App.1986), this court stated:

[The Plaintiff's] brief concentrates on foreseeability of harm as a component of the duty owed by [Defendant to Plaintiff] in making these representations. The trial court also focuses on foresee-

ability in dismissing the complaint. This approach is slightly off the mark.

In Arizona the rule is as follows:

The question of duty is decided by the court. The question is whether the relationship of the parties was such that the Defendant was under an obligation to use some care to avoid or prevent injury to the Plaintiff. If the answer is no, the Defendant is not liable even though he may have acted negligently in light of foreseeable risks.

*Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 356, 706 P.2d 364, 368 (1985). Contrary to [Plaintiff's] contention, a determination that its injury was foreseeable is not dispositive.

The key question is: was the relationship, if any, between the District and Brenda Nichols such that the District owed her a duty while she was using the crosswalk. We hold that the District did not owe her a duty of care.

The real parties in interest assert that the plaintiff in *Markowitz*, was only a one-time user of the state park. The supreme court nevertheless found a duty. They contend that since Brenda was a daily user of the crosswalk during the school year beginning in August 1986, a duty to her existed even more clearly than to the plaintiff in *Markowitz*.[1]

*Markowitz* is inapposite. In that case, the supreme court specifically found that the park was open to the general public and that the public was encouraged to use the park, therefore the landowner [the state] owed a duty to the plaintiff as an invitee upon its land. There is no indication in the record that any children, except those attending the Cordova School, were encouraged to use the crosswalk. In this case, Brenda was not an invitee of the District.

In this case, if there was any duty to Brenda Nichols, it was created by statute pursuant to the crosswalk agreement and the manual issued by the Arizona Depart-

1. The record before us does not indicate that Brenda was a daily user of the crosswalk. The school crossing guard stated in her deposition that she did not remember whether or not she ever crossed Brenda at the crosswalk in the school year that began in August, 1986.

ment of Transportation (formerly the Arizona Highway Commission).

The real parties in interest point out that the school crossing guard stated that had she been on duty at the time that Brenda started to use the crosswalk, she would have assisted her across the walk. The fact that this assistance would have been given does not create a duty when the guard was not present. If a guard voluntarily acts to assist another person, the duty of care then commences and not prior thereto. Neither the agreement, A.R.S. § 28–797, nor the "School Safety Program Guidelines" manual require that a guard be present at abutting crosswalks. A guard is required only at non-abutting crosswalks. Portable signs are the only requirement at abutting crosswalks.

■ The District posits that A.R.S. § 28–797 creates a duty only to children who are required to use the crosswalk to attend Cordova School. We agree. Section 28–797 states:

A. The director, with respect to state highways, or the officer, board or commission of the appropriate jurisdiction, with respect to county highways or city or town streets, by and with the advice of the school district governing board or superintendent of schools, may mark or cause to be marked by the department or local authorities *crosswalks in front of each school building or school grounds abutting thereon where children shall be required to cross the highway or street.*

(Emphasis added.) Clearly the purpose of the crosswalk is to protect children in crosswalks *abutting* their school where they are "required to cross" the street. Brenda Nichols did not attend that school. She was not *"required"* to use that crosswalk to cross the street to go to her school. Additionally, there was no relationship between the District and Brenda which would have enabled the District to "require" that Brenda use any designated crosswalk. At the time in question, she was walking in the opposite direction from her high school in order to get a ride to school when the accident occurred.

The agreement requires the school district to operate the crossing in accordance with the Arizona School Crossing Manual as adopted by the Arizona Highway Commission in July 1965. In 1974, the name of the Highway Department was changed to the Department of Transportation, and members of the Highway Commission became members of the Transportation Board. Based upon the record, it is apparent that this manual has been superseded by "School Safety Program Guidelines," issued by the Arizona Department of Transportation in January 1983. The Guidelines, on page 18 of Chapter 6, dealing with "Arizona School Crossing Controls," sets forth school crossing restrictions. Restriction # 1 states:

1. At no time shall a school crossing be used as a device to control vehicular speed, except as stated in A.R.S. 28–797 at a bona-fide installation where children are *required* to cross the street or highway.

(Emphasis added.) Restriction # 9 states:

*School crossings should not be established at high schools.* School crosswalks are reserved for the major crossing areas serving youths below high school age.... High-school age pedestrians have sufficient judgement and maturity to choose adequate gaps in traffic for their crossings. In effect, they are capable of functioning in traffic as adults.

(Emphasis added.)

The provisions of the Guidelines manual are pertinent because the agreement requires the District to act in conformance with the manual. The agreement, the manual, and the statute must be read together in determining the duties of the District. The manual clearly states that the duty does not extend to include high school children.

■ The real parties in interest assert that A.R.S. § 28–297(C) and (G), by the use of the word "persons," places a duty upon the school district with respect to all persons who use the crosswalk between the hours of 7:45 a.m. and 4:00 p.m., which are

the hours specified in the agreement. We disagree. Section 28–797(C) reads:

*The sign manual* shall provide for yellow marking of the school crossing, yellow marking of the center line of the roadway and the erection of *portable signs indicating that vehicles must stop when persons are in the crossing. The manual shall also provide the type and wording of portable signs* indicating that school is in session, *and permanent signs providing warning of approach to school crossings.*

(Emphasis added.) The sign manual referred to in subsection (C) is the sign manual specified in A.R.S. § 28–641, the first sentence of which reads: "The Director shall adopt a manual and specifications for a uniform system of traffic control devices for use upon highways within this state." Subsection (C) did not purport to prescribe the duties of the District. It sets out only the contents of the sign manual. Subsections (A), (D), and (E), the agreement, and the Guidelines prescribe the limits of the District's duty with respect to the abutting crosswalk.

Section 28–797(D) states:

When such crossings are established *school authorities shall* place within the highway *the portable signs* indicating that school is in session, placed not to exceed three hundred feet each side of the school crossings, and *"stop when children in crosswalk" signs at school crossings.* School authorities shall maintain these signs when school is in session and shall cause them to be removed immediately thereafter.

(Emphasis added.)

Section 28–797(E) states:

No vehicle *approaching the crosswalk shall proceed at a speed* to exceed fifteen miles per hour between *the portable signs* placed on the highway indicating "school in session" *and "stop when children in crosswalk."*

(Emphasis added.) Subsections (D) and (E) only require the district to place signs that say "Stop when children in crosswalk" when school is in session.

In subsection (C) the term "portable signs" is first used. Therefore the words "the portable signs" specified in (D) and (E) are the "portable signs" mentioned in subsection (C). Since (D) and (E) clearly read that the signs must state "Stop when children in crosswalk," it is apparent that the term "persons" as used in (C) was intended to mean children inasmuch as "the portable signs" to be placed by the District must use the word "children" rather than "persons."

Section 28–797(G) reads:

When the school authorities place and maintain *the required portable "school in session"* signs and *"stop when children in crosswalk" signs, all vehicles shall come to a complete stop at the school crossing when the crosswalk is occupied by any person.*

(Emphasis added.)

Subsection (C) does not broaden the District's duties. It prescribes the duties of a driver at times when the signs are in place. When they are not in place, A.R.S. § 28–792 prescribes the duties of drivers. Section 28–792(A) reads:

When traffic-control signals are not in place or not in operation the driver of a vehicle shall yield the right of way, *slowing down or stopping if need be to so yield,* to a pedestrian crossing the roadway within a cross walk when the pedestrian is upon the half of the roadway upon which the vehicle is traveling, or when the pedestrian is approaching so closely from the opposite half of the roadway as to be in danger, but no pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield. This provision shall not apply under the conditions stated in subsection B of § 28–793.

We hold that the District did not owe a duty to Brenda at the time of the accident. The District's duty under the statute and the agreement was solely to school children attending the Cordova school who were "required" to cross the street at the crosswalk abutting that school.

The order denying summary judgment in favor of the District is vacated. The case is remanded to the trial court with directions to enter summary judgment in favor of the District.

HAIRE, J., concurs.

GREER, Judge, dissenting:

I must respectfully dissent. The majority has misconstrued A.R.S. § 28–797. Brenda Nichols fell within the class of persons to whom the Alhambra School District (District) owed a duty of due care. To extend the majority holding to its logical conclusion would result in the District owing a duty to a Cordova school child injured in the crosswalk based, in part, on the District's failure to adequately sign, while denying liability to "any person" walking beside that student who was also injured. I find this outcome to be untenable.

The District entered into an operating agreement with the Phoenix Traffic Engineering Department regarding the school crossing at the intersection of 35th Avenue and Montebello, whereby the District agreed the portable signs would be in place between the hours of 7:45 a.m. and 4:00 p.m. each day school was in session. The District had, in effect, assumed control of the crosswalk during the designated time period, and it violated A.R.S. § 28–797 by failing to have placed the signs in the street.

Contrary to the majority's narrow interpretation of A.R.S. § 28–797 and the class of persons (Cordova school children) which they have determined the statute is intended to protect, the language contained in the statute is clear and unequivocal, leaving no opportunity for interpretation. The phrase "any person" as used in subsection (G) can be given but one meaning, and that meaning is not equivalent to "Cordova school children."

Only where a statute is ambiguous or unclear is a court at liberty to construe its language. *State v. Sweet,* 143 Ariz. 266, 693 P.2d 921 (1985); *City of Mesa v. Killingsworth,* 96 Ariz. 290, 394 P.2d 410 (1964). Although an ambiguity may be found to exist where there is uncertainty as to the meaning of terms in a statute, this is not the case regarding the statute now before this court. This is not a question of an ambiguous statute requiring judicial construction, but merely a matter of applying a statute that clearly demonstrates the intention of the legislature. Where the language of a statute conveys clear and definite meaning, there is no need to interpret the statute, and courts *must* follow its meaning as written. *State Farm Mut. Auto. Ins. Co. v. Agency Rent–A–Car, Inc.,* 139 Ariz. 201, 677 P.2d 1309 (App.1983). *See also Wasserman v. Low,* 143 Ariz. 4, 691 P.2d 716 (App.1984). Therefore, this court must give effect to the statute's unambiguous meaning. In addition, the majority mistakenly reads § 28–797(A) as restricting the scope of the District's duty to include only Cordova school children. A closer reading of subsection (A), however, reveals it is concerned simply with the authority to *establish* a school crosswalk.

The District clearly owed a common law duty to Brenda even though she no longer attended the school adjacent to the crosswalk (Cordova Elementary School). Brenda, as well as other persons (including adults), were foreseeable users of the crosswalk. The District could anticipate that any person using the crosswalk on a regular basis during the hours of 7:45 a.m. and 4:00 p.m. relied on the signs being in place each school day and in a timely manner. Brenda had crossed at this crosswalk every school day for approximately three years while she attended the elementary school. Although she no longer attended Cordova Elementary School, a trier of fact could find that she relied on the signs being timely erected and the added protection the signs provided.

The District's contention it owed no duty to Brenda because such signing is not required by the Arizona Department of Transportation (ADOT) Guidelines is misguided. The school crossing where Brenda was injured was an elementary school crossing, not a high school crossing. The placement of school signs at the elementary school crossing is required *by law.*

The assertion that the effect of the trial court's ruling would be to require all school districts in the state "to police the adjacent streets and be responsible for the safety of anyone crossing those streets, at any hour" and to act as "city planners and/or traffic engineers," in addition to the cost of liability insurance "increasing dramatically" is simply unfounded. Rather, the result would be that school districts would have a duty to persons moving within crosswalks *operated* and *controlled* by the districts only during a narrowly-prescribed time period.

Finally, this court should not have accepted jurisdiction. The appellate courts of this state follow a general policy of declining jurisdiction when relief by special action is sought to obtain review of orders denying motions for summary judgment. *United States v. Superior Court,* 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985).

"In our view appeal after judgment usually is an adequate remedy if the trial court has erred on the law in denying motions to dismiss or for summary judgment."

*Id.*