796 P.2d 470

**ALHAMBRA SCHOOL DISTRICT, Petitioner,**

v.

**SUPERIOR COURT of the State of Arizona, In and For the COUNTY OF MARICOPA, Honorable Cecil Patterson, a Judge thereof, Respondent Judge,**

Brenda NICHOLS, a minor, By and Through her father, Russell NICHOLS; Russell Nichols, individually; and Louise Klein, Real Parties in Interest.

No. CV–89–0249–PR.

Supreme Court of Arizona, En Banc.

July 12, 1990.

Reconsideration Denied Sept. 18, 1990.

Teilborg, Sanders & Parks, P.C. by John C. Gemmill, Alison Lewis, Jean E. Huffington, Phoenix, for petitioner.

The Langerman Law Offices by Amy G. Langerman, Richard W. Langerman, and Langerman, Begam, Lewis and Marks by Elliot G. Wolfe, Phoenix, for real parties in interest.

## OPINION

FELDMAN, Vice Chief Justice.

Brenda Nichols petitions this court to review a court of appeals' opinion holding that the school district owed her no duty of care and directing entry of summary judgment in favor of the district. *See Alhambra School District v. Superior Court*, 161 Ariz. 568, 780 P.2d 401 (Ct.App.1989).

The court of appeals accepted jurisdiction of a petition for special action to review the trial court's order denying summary judgment. We granted review to decide whether the court of appeals erred in finding that the school district had neither a common law nor statutory duty of care to protect foreseeable users of a school crosswalk from unreasonable risks of harm. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

Brenda Nichols (Brenda), a student at Alhambra High School, was struck by a motor vehicle and injured as she was crossing North 35th Avenue in a school crosswalk that abutted Cordova Elementary School (Cordova) in Phoenix's Alhambra School District (District). Cordova is located at North 35th Avenue and West Montebello Street. Pursuant to A.R.S. § 28–797, the Arizona School Crosswalk Statute, the City of Phoenix and the District agreed before the accident to establish a crosswalk across 35th Avenue. In its application for

the abutting school crossing, the District stated:

In event of approval and subsequent establishment by markings and appropriate signs, the undersigned school authority agrees to administer all duties as prescribed in Section 28–797 of the Arizona Revised Statutes, and to operate the crossing in conformance to the Arizona School Crossing Manual as adopted by the Arizona Highway Commission July 7, 1965.[1]

The application was approved with the provision that "the portable signs will be in place within the roadway between 7:45 a.m. and 4:00 p.m. during all days the school is in session." In addition, although not required to do so, the District hired a crossing guard to supplement the marking and signing required by A.R.S. § 28–797—yellow striping, 15 m.p.h. speed limit, no passing zones, and portable school crossing signs. Generally, the school did not place the portable signs in the road until between 7:50 and 8:00 a.m., and the crossing guard did not arrive until 8:00 a.m.

Brenda attended Cordova until she graduated from the eighth grade in 1986. She then attended Alhambra High School, which is part of the Phoenix Union High School District. On October 16, 1986, she was walking to the home of a friend who was to give her a ride to Alhambra. She was crossing 35th Avenue from east to west when she was struck by a southbound car.

Brenda's parents brought a damage action on her behalf against the District, alleging it negligently failed to post signs or provide a guard at the crossing during a time when such action should have been taken.[2]

The District moved for summary judgment on the ground that it owed no duty of care to Brenda, who was not a student at Cordova. For purposes of summary judgment, it was assumed that Brenda was struck in the crosswalk between 7:45 and 8:00 a.m., at a time when the portable 15 m.p.h. school zone signs should have been in place but were not, and before the crosswalk guard arrived. The trial court denied the motion, as well as the motion for reconsideration that followed.

The District then petitioned the court of appeals for special action relief. The court of appeals accepted jurisdiction and granted the requested relief, ordering the trial judge to grant summary judgment in favor of the District.[3] *See Alhambra School Dist.*, 161 Ariz. at 573, 780 P.2d at 406. A majority of the court held that the District owed a duty of care only to Cordova students. *Id.* at 572, 780 P.2d at 405. Thus, according to the court, the District did not owe Brenda, a student at Alhambra, a duty of care even though Brenda was legally using a crosswalk established by the District.

Because the court held no common law duty was owed to Brenda, it concluded that if any duty existed, it must have been created by statute pursuant to the crosswalk agreement and the manual issued by ADOT. *Id.* at 570, 780 P.2d at 403. The court believed the construction of A.R.S. § 28–797, entitled "School Crossings,"[4]

1. In 1974, the name of the Highway Commission was changed to the Arizona Department of Transportation (ADOT). ADOT issued a School Safety Program Guidelines manual in January 1983. All parties and the court presume that the 1983 publication supersedes the manual referred to in the agreement.

2. Nothing in this record explains just how the District's failure to post signs or provide a guard fell below the standard of reasonable care or, if it did, how it caused the accident. The case was not decided on these issues, however. The issue addressed by the court of appeals was the question of duty, and that is the *only* issue addressed in this opinion.

3. In general, appellate courts in Arizona follow a policy of declining jurisdiction when special action relief is sought in such a case. *United States v. Superior Court*, 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). As we stated in *United States*, "in our view appeal after judgment usually is an adequate remedy if the trial court has erred on the law in denying motions to dismiss or for summary judgment." *Id.*

4. The pertinent subsections of that statute are as follows:

A. The director, with respect to state highways, or the officer, board or commission of the appropriate jurisdiction, with respect to county highways or city or town streets, by

was at the crux of the appeal. The majority held that § 28–797 did not impose a duty of care on the District with respect to any persons other than students at Cordova because it believed "the term 'persons' as used in (C) was intended to mean only children inasmuch as 'the portable signs' to be placed by the District must use the word 'children' rather than 'persons.'" *Id.* at 572, 780 P.2d at 405. In the majority's view, because Brenda was not a student at Cordova, no relationship existed between Brenda and the District that gave the District power to "require" Brenda to use any designated crosswalk. *Id.* at 571, 780 P.2d at 404. Accordingly, the court remanded the case for entry of summary judgment in favor of the District. *Id.* at 573, 780 P.2d at 405.

### DISCUSSION

#### A. Duty

##### 1. *Did the District Owe Brenda a Common Law Duty of Care?*

■ In a negligence action the plaintiff must establish that the defendant has a duty to conform to a particular standard of conduct to protect the plaintiff against unreasonable risks of harm. *See Markowitz v. Arizona Parks Bd.*, 146 Ariz. 352, 354, 706 P.2d 364, 366 (1985); *Ontiveros v. Borak*, 136 Ariz. 500, 667 P.2d 200 (1983). As Chief Judge Cardozo stated in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99, 100 (1928): "The risk reasonably to be perceived defines the duty to be obeyed." *See also Schnyder v. Empire Metals, Inc.*, 136 Ariz. 428, 430, 666 P.2d 528, 530 (Ct.App.1983) ("The scope of the risk created by one's conduct defines the group of potential plaintiffs to whom a duty is owed"). The question of duty is generally a matter of law for the court. *Markowitz*, 146 Ariz. at 354, 706 P.2d at 366; *Beach v. City of Phoenix*, 136 Ariz. 601, 667 P.2d 1316 (1983).

■ As we have previously stated, the concept of duty should not be equated with specific details of conduct. *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367; *Coburn v. City of Tucson*, 143 Ariz. 50, 52, 691 P.2d 1078, 1080 (1984). Duty refers to the relationship between individuals; it imposes a legal obligation on one party for the benefit of the other party. *Id.* The specific details of conduct involved do not determine the duty owed but bear on the issue of whether a defendant has breached a duty owed. *Markowitz*, 146 Ariz. at 355, 706 P.2d at 367.

■ The District argues that Cordova students were the only intended beneficiaries of the school crossing and that it is only those students, and not other users of the crosswalk, with whom it had a relationship that could impose a duty of care. The District asks why it should be forced to

and with the advice of the school district governing board or superintendent of schools, may mark or cause to be marked by the department or local authorities crosswalks in front of each school building or school grounds abutting thereon where children shall be required to cross the highway or street.

. . . . .

C. The sign manual shall provide for yellow marking of the school crossing, yellow marking of the center line of the roadway and the erection of portable signs indicating that vehicles must stop when persons are in the crossing. The manual shall also provide the type and wording of portable signs indicating that school is in session, and permanent signs providing warning of approach to school crossings.

D. When such crossings are established school authorities shall place within the highway the portable signs indicating that school is in session, placed not to exceed three hundred feet each side of the school crossings, and "stop when children in crosswalk" signs at school crossings. School authorities shall maintain these signs when school is in session and shall cause them to be removed immediately thereafter.

E. No vehicle approaching the crosswalk shall proceed at a speed to exceed fifteen miles per hour between the portable signs placed on the highway indicating "school in session" and "stop when children in crosswalk."

. . . . .

G. When the school authorities place and maintain the required portable "school in session" signs and "stop when children in crosswalk" signs, all vehicles shall come to a complete stop at the school crossing when the crosswalk is occupied by *any person.*

take on the responsibility of protecting not only its students but any person using the crosswalk. The answer, of course, is that the District applied for and established a specially marked crosswalk, where none previously existed. Certainly, the finder of fact could conclude that foreseeable users of the crosswalk might rely on the safety precautions normally attending such crosswalks.

School crosswalks are not limited by statute to use by the students of the school but are available for use by the general public, because they are on public thoroughfares. At the time it applied for establishment of this crosswalk, the District was aware that the crosswalk would be open to the general public and that nothing limits the use of a school crossing solely to students. Furthermore, the District took no steps to attempt to limit the use of this crosswalk to students of the abutting school or to disclaim any responsibility it might have to other crosswalk users.

Although pedestrians are not absolutely required to use crosswalks to cross a street,[5] it is certainly foreseeable that pedestrians might conclude they are required to use a crosswalk where one exists, or at least that use of a marked crosswalk would be the prudent thing to do.[6] A pedestrian might reasonably rely on the added safety of a marked crosswalk—particularly a school crosswalk, with its additional protections.

We conclude, therefore, that in creating the marked crosswalk where none previously existed, the District created a relationship with those who would use the crosswalk and thereby assumed a duty of

reasonable care with respect to its operation. *Markowitz; see also Palsgraf.* The particular facts of the case—the age of the injured person, the time of the accident, the configuration of the street near the crosswalk, what school activities were going on at the time, what the District agreed to do with respect to operating the crosswalk, such as posting signs during school hours, etc.—are the circumstances under which the reasonableness of the District's conduct is to be judged.[7] We conclude that the District owed Brenda a common law duty of care.

2. *Statutory*

 The relationship that gives rise to a duty of care may also be created by statute. *See Ontiveros,* 136 Ariz. at 509, 667 P.2d at 209; *see also* PROSSER AND KEETON ON THE LAW OF TORTS § 36, at 220 (5th ed. 1984); Restatement (Second) of Torts §§ 285–86 (hereafter Restatement). In this case, both the District and the court of appeals' opinion construed the statute involved, A.R.S. § 28–797, to limit the District's duty solely to the students of Cordova. Relying on A.R.S. § 28–797, the opinion reasoned that, because the portable signs mentioned in subsections (D) and (E) must read "Stop when children in crosswalk," and because subsection (G) requires all vehicles to stop for any person in the crosswalk when the signs are in place, the term "persons" as used in the statute really was intended to mean "children" who were "required" to use the crosswalk. 161 Ariz. at 572, 780 P.2d at 405.

A.R.S. § 28–797 (emphasis added).

Phoenix City Code, art. X, § 36–128 (1966).

5. Local authorities may pass an ordinance prohibiting pedestrians from crossing any roadway in a business district or any designated highways except in a crosswalk. *See* A.R.S. § 28–791(B). Phoenix has not passed such an ordinance. Phoenix does have an ordinance that states:

> Except in a crosswalk, no pedestrian shall cross a roadway at any place other than by a route at right angles to the curb or by the shortest route to the opposite curb. A pedestrian shall not cross a roadway where prohibited by appropriate signs, markings, devices or by law.

6. A.R.S. § 28–792 provides that the driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within a crosswalk. A.R.S. § 28–793 provides that every pedestrian crossing a roadway at any point other than within a crosswalk (marked or unmarked) must yield the right of way to all vehicles.

7. In other words, in this case, the conduct of the District in not posting the signs by 7:45 a.m. does not determine whether the District owed Brenda a duty of reasonable care, but is relevant to determine whether the District breached any duty that was owed.

This construction of the statute strains the language beyond the bursting point. The common meaning of "person" clearly is not "students of Cordova Elementary School." The legislature has not expressed its intention that "person" should be read to mean "student of Cordova Elementary School," or even "children." [8] Surely we are not to infer that because the sign says "children," drivers are free to run down any adult who may be using the crosswalk. The legislature's intention is clear in this case. If it had intended to limit the protection only to students of Cordova, it could easily have done so. Therefore we must give effect to the statute's unambiguous meaning. By following the statutory procedure to establish a marked crosswalk, the District assumed a duty of care to "persons" using the crosswalk, not just students of the abutting school. We conclude that the District owed a statutory duty of care to Brenda Nichols.

## CONCLUSION

Because we conclude that the District owes a duty of care to all users of the crosswalk, we find that the court of appeals erred in directing summary judgment in favor of the District. The opinion granting summary judgment is vacated, the judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

GORDON, C.J., and MOELLER and CORCORAN, JJ., concur.

CAMERON, Justice, dissenting.

I dissent for the reasons set forth in the majority opinion of the court of appeals. *See Alhambra School District v. Superior Court*, 161 Ariz. 568, 780 P.2d 401 (Ct.App. 1989).

---

**8.** Even if we agreed that "person" meant "child" or "children," under the statutory definition of these terms, the District would still owe Brenda a duty of care. A.R.S. § 1–215(4) defines "child" or "children" as persons under the age of eighteen years. Because Brenda was only fourteen at the time of the accident, she falls within this definition.