NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PAMELA ANNE PHILLIPS, *Appellant.*

No. 1 CA-CR 17-0285
FILED 7-10-2018

Appeal from the Superior Court in Pima County
No. CR20084012
The Honorable Richard S. Fields, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Jonathan Bass
*Counsel for Appellee*

Bob Kerry Law, Tucson
By Robert A. Kerry
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Peter B. Swann joined.

_____

**T H U M M A,** Chief Judge:

**¶1** Pamela Anne Phillips appeals her convictions for first degree murder and conspiracy to commit first degree murder and resulting sentences. Because she has shown no reversible error, her convictions and sentences are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2** On November 1, 1996, Gary Triano was killed by a bomb placed on the passenger seat of his car in the parking lot of a Tucson country club. Although Phillips, Triano's former wife, was a person of interest, the crime remained unsolved for nearly a decade.

**¶3** Phillips and Triano divorced in late 1993 and continued to dispute custody, visitation and child support. After the divorce, Phillips remained the owner and beneficiary of a $2 million insurance policy on Triano's life. Phillips collected the $2 million proceeds on the policy three months after Triano was killed.

**¶4** In 1994, Phillips moved to Aspen, Colorado. There, Phillips began an intimate relationship with Ronald Young, a neighbor. Young also acted as Phillips' business consultant and helped her develop a website.

**¶5** In April 1996, two businessmen reported to the police that Young had defrauded them. Phillips' attorney also reported Young to the police for fraud. A few weeks later, however, Phillips indicated she no longer wanted to participate in the investigation. An Aspen police detective

_____

[1] This court views the facts in the light most favorable to sustaining the verdicts and resolves all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

sought to interview Young, but could not locate him. The Aspen police eventually obtained an arrest warrant for Young on fraud charges.

¶6        Around this same time, Young left Aspen in a rented van. In July 1996, using an assumed name, Young stayed at a Tucson area hotel near Triano's home for several weeks. During this time, Triano told his girlfriend that he believed he was being followed. When Young's rented van was not timely returned, the rental company reported it stolen.

¶7        In October 1996, a few weeks before Triano's murder, Young's rented van was located in California, where police impounded it and contacted the Aspen police. An Aspen police detective traveled to California and participated in a search of the van. Inside the van, police found a shotgun and ammunition; an Arizona license plate; a Tucson map; paperwork with Young's name on it; and lists in Young's handwriting of Triano's friends and family, the cars they drove and where they worked. The van also contained paperwork pertaining to Phillips' divorce from Triano, correspondence from Phillips, documents showing Young's May 1996 purchase of an airplane ticket for Phillips to fly from Aspen to Denver and back and bills for a stay in a Tucson hotel near Triano's home in July 1996. After learning of Triano's murder, the Aspen police contacted the Pima County Sheriff's Office, which was the lead agency investigating the crime, and turned over items found in the van.

¶8        In 2005, Young was arrested in Florida on the Colorado fraud warrant after being featured on the television show *America's Most Wanted*. Searches of his residence, hotel room, storage unit, vehicle and a laptop computer seized during his arrest revealed Young regularly had been receiving money from Phillips after Triano's death. Among other things, Young maintained amortization schedules showing payments made on a $400,000 debt. A forensic accountant examined that evidence, as well as Young's and Phillips' bank statements and shipping records. The accountant found the loan schedules were consistent with payments Phillips had been making to Young beginning in early 1997, when Phillips first received proceeds of the life insurance policy on Triano's life, until late 2004 or early 2005. The accountant also concluded the two had attempted to conceal the transactions.

¶9        Young had recorded telephone calls with Phillips in which they discussed the payments. These recordings show that they referred to their financial dealings, explicitly and implicitly, as an illegal arrangement, and Phillips expressed concern about being detected. During one call, Young reminded Phillips that he had "helped" her "with something that

was beyond what anybody else in the world would probably do" and that she was "living off the benefits of it." During another call, when they disagreed about how much Phillips owed Young, he warned her that she would "be in prison for murder."

**¶10**　　　　In October 2008, Phillips and Young were charged with first degree murder and conspiracy to commit first degree murder. Phillips was in Europe at the time and remained there until being extradited to the United States in 2010. Young was tried and convicted in 2010, while Phillips was still in Europe. In 2012, Young's convictions and natural life sentence were affirmed on appeal, although the court remanded for resentencing on his conspiracy to commit first degree murder conviction. *See State v. Young*, 2012 WL 642852 (Ariz. App. Feb. 29, 2012) (mem. dec.)

**¶11**　　　　Phillips was found incompetent but then restored to competency. After a jury trial in 2014, Phillips was convicted on both charges and sentenced to concurrent life prison terms, with the possibility of release after service of 25 calendar years for the conspiracy conviction. This court has jurisdiction over Phillips' timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031 and 13-4033(A)(2018).[2]

## DISCUSSION

### I.　　Phillips Was Not Improperly Denied Contact With Her Attorneys.

**¶12**　　　　After Phillips' arraignment, the superior court granted a motion by her counsel for a competency evaluation. *See* Ariz. R. Crim. P. 11. In December 2011, after considering expert reports, the court found Phillips incompetent but restorable and ordered restoration services. Phillips argues she is entitled to automatic reversal of her convictions and sentences for structural error because the court limited contact between her and her counsel for a time while she was in restoration. The order limiting contact was entered after the court received a status report from the treating psychologist criticizing defense counsel for interfering with restoration services. This court reviews de novo Phillips' claim that she was denied her constitutional right to counsel. *State v. Rasul*, 216 Ariz. 491, 493 ¶ 4 (App. 2007).

**¶13**　　　　In February 2012, finding that defense counsel was engaging in "blatant and intentional interference with the effort to restore an

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

incompetent defendant, as well as a direct attack on the entire restoration program," the superior court restricted defense counsel's visitation with Phillips while in restoration to one hour in-person contact every 30 days and one five-minute phone call per week. The court also prohibited counsel from responding to Phillips' letters during this time. These restrictions were in place for 87 days, from February 9, 2012 to May 7, 2012. The restrictions were lifted after the attorney whose conduct had created the problem was removed from the defense team for reasons not relevant here. Phillips continued in restoration until late November 2012, when the court found she was restored to competency. Her trial started in mid-February 2014.

**¶14**     A criminal defendant has the right to the assistance of counsel under both the United States and Arizona Constitutions. U.S. Const. amend. VI; Ariz. Const. art. II, § 24; *State v. Ruiz*, 236 Ariz. 317, 325 ¶ 30 (App. 2014). This right extends to "all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004); *State v. Moody*, 208 Ariz. 424, 445 ¶ 65 (2004). A critical stage is one where "substantial rights of . . . [the] accused may be affected." *Mempa v. Rhay*, 389 U.S. 128, 134 (1967); *see also Bell v. Cone,* 535 U.S. 685, 696 (2002) (defining a critical stage as "a step of a criminal proceeding, such as arraignment, that h[o]ld[s] significant consequences for the accused"). Not every restriction on counsel's time or opportunity to consult with a client, however, violates a defendant's Sixth Amendment right to counsel. *Morris v. Slappy*, 461 U.S. 1, 11 (1983). Furthermore, in most cases involving a claim of interference with the right to counsel, the defendant bears the burden of showing that the challenged conduct resulted in prejudice to be entitled to relief. *United States v. Cronic*, 466 U.S. 648, 658 (1984).

**¶15**     Phillips acknowledges that any prejudice from the limitation on counsel's contact with her during restoration services is speculative. Relying on *Geders v. United States*, 425 U.S. 80 (1976), however, Phillips argues limiting counsel's contact was structural error that requires reversal without a showing of prejudice. Structural errors are those that "affect the entire conduct of the trial from beginning to end, and thus taint the framework within which the trial proceeds." *State v. Henderson*, 210 Ariz. 561, 565 ¶ 12 (2005) (citations and internal quotations marks omitted). When structural error is shown, a guilty verdict is subject to automatic reversal without any showing of prejudice. *State v. Ring*, 204 Ariz. 534, 552 ¶ 45 (2003). This is because structural errors "deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair.'" *Id*. (quoting *Neder v. United States*, 527 U.S. 1, 8-9 (1999). There are relatively few

instances that qualify as structural error. *Ring*, 204 Ariz. at 552 ¶ 46. They include complete denial of criminal defense counsel and denial of access to criminal defense counsel during an overnight trial recess. *Id.*

**¶16** Recognizing that the order did not result in a complete denial of contact with her counsel, Phillips seeks to equate the order limiting contact with counsel for a time when she was in restoration to the denial of access to defense counsel during a trial recess as in *Geders*. *Geders*, however, is distinguishable. The denial of contact with counsel in that case occurred during trial. Here, by contrast, the restriction on contact occurred during restoration nearly two years before trial. Unlike a defendant's trial, restoration services do not deal with the merits of the criminal charge. *State v. Superior Court (Gioranella)*, 113 Ariz. 432, 434 (1976). Thus, Phillips has not shown that participation in restoration should be viewed as a critical stage of the criminal proceedings under *Geders*. This is particularly true given that restoration services are provided when a defendant is legally incompetent, i.e., "unable to understand the nature and objective of the proceedings [against her] or to assist in [her] defense." Ariz. R. Crim. P. 11.1(a)(2). Accordingly, absent some impact of the challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 867-869 (1982); *United States v. Morrison*, 449 U.S. 361, 364-365 (1981); *Weatherford v. Bursey*, 429 U.S. 545 (1977).

**¶17** Moreover, unlike in *Geders*, there was no complete denial of counsel at a critical stage, only a limitation on the amount of contact counsel was permitted to have with Phillips during restoration. The court's order permitted counsel to visit with Phillips, but limited contact consistent with the amount of visitation other defense counsel often had with clients in restoration to prevent interference with treatment. Given that Phillips concedes she is unable to show prejudice from the order limiting contact during restoration, that order does not provide any basis for reversal.

## II. The Superior Court Properly Denied Phillips' Motion To Dismiss Or For A Continuance As A Sanction For Discovery Violations.

**¶18** Multiple law enforcement agencies participated in the murder investigation, including the Tucson Police Department; the Arizona Department of Public Safety and various federal law enforcement agencies, all coordinated by the Pima County Sheriff's Office. Initially, the State disclosed more than 300,000 pages (about 160 boxes) of documents to Phillips. Phillips sought and obtained, approximately a month before trial, about 2,000 pages of information (some of it apparently not previously

disclosed by the State) from federal agencies. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Claiming the State (not the federal agencies) should have disclosed these documents, Phillips moved to dismiss the charges as a discovery sanction under Ariz. R. Crim. P. 15, asserting a violation of her due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) or, in the alternative, for a continuance.

**¶19** The superior court denied the request for a continuance and deferred ruling on the motion to dismiss until after trial. At a post-trial hearing, Phillips argued the disclosure issue meant she was unable to fully investigate and present a third party-culpability defense (primarily, that Neil McNeice "had the motive, means, and opportunity to kill Triano") and was unable to properly prepare witness Dr. Lawrence D'Antonio, McNeice's personal physician, to testify at trial. After considering the arguments and the trial evidence, the court denied the motion to dismiss. Phillips argues the court erred in denying her motions, rulings this court reviews for an abuse of discretion. *State v. Roque*, 213 Ariz. 193, 205 ¶21 (2006), *overruled on other grounds by State v. Escalante–Orozco*, 241 Ariz. 254 ¶¶ 13–14 (2017); *State v. Medrano*, 173 Ariz. 393, 399 (1992).

**¶20** Phillips first argues the information she received from the federal agencies "was not outside of the state's control." But she does not factually support that argument. Nor does she show how, by receiving approximately one box of documents about a month before trial, the superior court was required to dismiss the charges against her or grant the requested continuance. Similarly, she has not shown dismissal or a continuance was mandated by her unsupported claim that, "[h]ad the federal reports been disclosed as required, Phillips would have been able to do a more thorough and focused independent investigation."

**¶21** Phillips concedes that some of the information obtained from the federal agencies was (or contained) information she had independently discovered years earlier. That the information purportedly "connected" various individuals to other individuals and entities "that possibly also had motives to kill Triano," and cars at the country club when Triano was killed, does not mean the superior court erred in denying her requested relief. Similarly, Phillips has not shown that earlier disclosure of this information would have meant that Dr. D'Antonio would have fared better during cross-examination.

**¶22** Although claiming the source of the disclosed information should have been the State (not federal agencies), the fact remains that Phillips received the information before trial. Indeed, had she not received

such disclosure from the federal agencies, the factual predicate for her argument on appeal would appear to be lacking. Particularly given that she used the disclosed information at trial, Phillips has not shown how the source of the disclosed information would require dismissal of the charges with prejudice. *Accord State v. Jessen*, 130 Ariz. 1, 4 (1981) ("When previously undisclosed exculpatory information is revealed at the trial and is presented to the jury, there is no *Brady* violation").[3]

**¶23** Phillips also has not shown how Young seeking a rehearing in his pursuing post-conviction relief raises issues relevant in her direct appeal in this case, or that Young's filings mean Phillips properly raised the issue with the superior court. Similarly, that four pages of Tim Alger's phone bill that Phillips asserts Alger's "ex-wife had faxed . . . to the secret service detectives in 1997" were missing would not require dismissal of the charges with prejudice or a continuance. Although Phillips speculates that the timing of the disclosure "resulted in an unprepared and ineffective presentation of Phillips' third-party culpability defense," generically referencing "testimony" of five trial witnesses (with no further specificity) does not prove the point. On this record, Phillips has shown no abuse of discretion (or fundamental error resulting in prejudice, to the extent a specific issue was not timely raised) in the denial of her motion to dismiss with prejudice or, alternatively, for a continuance as a discovery sanction. *Roque*, 213 Ariz. at 205 ¶21; *Henderson*, 210 Ariz. at 567 ¶ 19; *Medrano*, 173 Ariz. at 399; *State v. James*, 231 Ariz. 490, 493 ¶ 11 (App. 2013).

## III.  Phillips Has Not Shown The Superior Court's Evidentiary Rulings Denied Her The Right To Properly Present A Defense.

**¶24** Phillips argues the superior court erroneously limited her presentation of (1) "third-party culpability evidence involving . . . McNeice" and (2) evidence of "her legitimate financial relationship with Young." In exercising the right to a complete defense, "the accused, as is required of

---

[3] It does not appear that, in pressing this argument, Phillips claims evidence was never disclosed. To the extent she intends to do so, she has failed to show with specificity, or support, what such evidence would have shown and cannot, accordingly, show a *Brady* violation. *See, e.g., Strickler v. Greene,* 527 U.S. 263, 281-82 (noting a *Brady* violation requires showing "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"); *State v. Montaño*, 204 Ariz. 413, 424 ¶ 52 (2003) ("'The test for a *Brady* violation is whether the undisclosed material would have created a reasonable doubt had it been presented to the jury.'") (citation omitted).

the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). "The admission of third-party culpability evidence is governed by the standards of Rules 401 through 403 of the Arizona Rules of Evidence, not by Rule 404(b)." *State v. Machado*, 226 Ariz. 281, 284 ¶ 16 (2011). The admission or exclusion of evidence is reviewed for an abuse of discretion. *See State v. Escalante–Orozco*, 241 Ariz. 254, 274 ¶ 51 (2017).

¶25 As to the third-party culpability evidence, Phillips argues the superior court was required to admit evidence of purported affiliations or relationships McNeice had with others, including a bodyguard who previously worked for an individual who was allegedly "a member of the Armenian crime syndicate in" Los Angeles, and who knew others who were capable of building a bomb, and still others who could have "undertake[n] the bombing." Phillips also asserts that the court erred in precluding "evidence that bore on the credibility of Dr. D'Antonio, who was the chief witness against McNeice," "evidence of McNeice's mob ties in Los Angeles," evidence that McNeice "was a suspect in another bombing, that he kept a 'hit list,' and that other people who owed him money were on the list."

¶26 To the extent Phillips challenges the admission of evidence regarding McNeice's affiliations, she has failed to show reversible or fundamental error resulting in prejudice. To be admissible, third-party culpability evidence "must have an effect on the defendant's culpability" for the charged crimes, tending "'to create a reasonable doubt as to the defendant's guilt.'" *Escalante-Orozco*, 241 Ariz. at 276 ¶69 (citation omitted). The superior court properly could conclude that the evidence of McNeice's purported affiliations "had scant probative weight and was substantially outweighed by the danger of confusing or misleading the jury," and that such affiliations or relationships "did not tend to create a reasonable doubt about [Phillips'] guilt. The jury would have had to speculate to find otherwise." *Id.* at 276-77 ¶ 69 (citations omitted). Similarly, Phillips has not shown error in the exclusion as hearsay evidence about McNeice's purported "hit list." *See* Ariz. R. Evid. 801(c), 802.

¶27 To the extent Phillips argues the superior court erroneously "precluded evidence that bore on the credibility of" Dr. D'Antonio, she has failed to show reversible or fundamental error resulting in prejudice. *See, e.g.*, Ariz. R. Evid. 103(e), 401, 403, 611, 801, 802. The court was not required to admit hearsay or cumulative, irrelevant or unfairly prejudicial evidence in response to Phillips' claim that such evidence bore on witness credibility.

*See, e.g.*, Ariz. R. Evid. 403, 802; *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (concluding a defendant's right to present evidence is subject to compliance with reasonable evidentiary rules). Nor has she shown that precluded redirect testimony had to be admitted under the prior consistent statement exception to the rule against hearsay. *See* Ariz. R. Evid. 801(d)(1)(B). Finally, to the extent she argues the court erroneously precluded evidence purportedly showing her financial involvement with Young "was legitimate," Phillips has not shown the court reversibly or fundamentally erred in precluding some evidence as inadmissible hearsay and precluding other evidence as irrelevant. This includes what Phillips characterizes as a desire to have communications between them "analyzed to determine if they were about" a specified piece of property or a sustained objection, on redirect of one of her witnesses, about a check attached to a 1994 letter that was used to refresh the witness' recollection. Even if timely raised before the superior court and properly argued on appeal, Phillips has not shown the court erroneously excluded such evidence or that it improperly denied her the right to present a defense.

**IV.    The Superior Court Did Not Improperly Limit Phillips' Presentation Of Other Purported Third-Party Culpability Evidence.**

¶28        The superior court allowed Phillips to present significant evidence to support her third-party culpability defense that McNeice killed Triano. On appeal, Phillips argues she "sought to introduce evidence that others also had the motive and means to murder Triano," and that the court "erroneously precluded [her] from introducing any third-party culpability evidence that did not pertain to McNeice." Phillips argues broadly that "[t]he pipe bomb execution created the real possibility that the perpetrator was anyone with the motive, means and opportunity to commit the crime." She then asserts that "Triano had ties to criminal enterprises," which she claims "creates a reasonable doubt about" her guilt. In pressing these arguments, Phillips paints with too broad a brush.

¶29        Asserting a third-party culpability defense does not, as Phillips suggests, require a court to admit all evidence regarding every individual who may have had a motive, means or opportunity to commit a crime. "[V]ague grounds of suspicion" of another do not constitute admissible third-party culpability evidence. *State v. Bigger*, 227 Ariz. 196, 209 ¶ 43 (App. 2011) (citation omitted). As pointedly noted by the Arizona Supreme Court more than once, a "'defendant may not, in the guise of a third-party culpability defense, simply throw strands of speculation on the wall and see if any of them stick.'" *State v. Goudeau*, 239 Ariz. 421, 460 ¶ 165

(2016) (quoting *Machado*, 226 Ariz. at 284 ¶ 16 n.2). Nor does Phillips cite any authority supporting her assertion that admitting at trial all evidence for every individual who may have had a motive, means or opportunity to commit a crime would not "have caused any confusion of the issues." The record on appeal does not support Phillips' further third-party culpability evidence arguments.

¶30 At trial, Phillips' counsel was allowed to cross-examine Detective St. John, the lead detective from 1996 until 1998, to show that there were several potential suspects identified at the beginning of the investigation, and "there were a lot of people with a lot of motives to kill" Triano. When Phillips' attorney asked about a specific individual, outside of the presence of the jury, the State noted that "third party culpability case law indicates that . . . speculative potential people who might be responsible is not admissible," adding that evidence of "potential suspects [other than McNeice] at that time is irrelevant and not probative, and it has 403 problems in terms of confusion of the jury." During a lengthy discussion, after listing various individuals or entities purportedly having a motive to kill Triano, Phillips' attorney avowed "I'm not going to get into hearsay," adding "I'm not saying that they did it. I'm just saying that they were investigated because they had motive." Given this avowal, the court allowed Phillips' attorney to ask Detective St. John whether Phillips "was the only suspect investigated," and whether he investigated various other individuals or entities and why. In the presence of the jury, Phillips' counsel then asked those questions and the witness answered them. In doing so, the superior court allowed the type of questioning Phillips requested at trial.

¶31 To the extent Phillips' appellate argument differs from what she requested at trial, review is limited to fundamental error. *Henderson*, 210 Ariz. 561, 567 ¶ 19. Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to [her] defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Id.* "Accordingly, [Phillips] bears the burden to establish that (1) error exists, (2) the error is fundamental, and (3) the error caused [her] prejudice." *James*, 231 Ariz. at 493 ¶ 11 (citations and internal quotations omitted). Phillips has shown no fundamental error on the point, let alone fundamental error resulting in prejudice.

¶32 To the extent Phillips timely raised the issue at trial, she has not shown that the superior court, in the guise of third-party culpability evidence, was required to admit evidence that Triano "was involved with several Indian casino ventures" and "owed money to Las Vegas casinos" and filed bankruptcy when "he owed $26.8 million to creditors." Nor has

she shown that the court was required to admit evidence of any planned civil action between Triano and Gary Fears involving a casino in China that failed to open. Similarly, she has not shown that evidence of Triano's helping to gather incriminating evidence against another arising out of a bankruptcy proceeding, or that an entity lost money in a deal with Triano, had to be admitted as third-party culpability evidence. Relatedly, Phillips has not shown what evidence she sought to offer of a purported death threat to Triano by "an entity with reputed connections to a Mexican cartel" that purportedly "lost $2 million in a deal with Triano." Finally, her argument on appeal that "[t]he pipe bomb was a classic organized crime technique to kill" does not, somehow, demonstrate error by the superior court in determining the admissibility of third-party culpability evidence based on the record and arguments presented at trial.

## V. Phillips Has Not Shown A Violation Of Her Due Process And Fair Trial Rights As A Result Of Prosecutorial Misconduct.

¶33 Phillips argues prosecutorial misconduct based on (1) intentionally withholding evidence; (2) witness intimidation; and (3) a prosecutor starting an outside consulting business. Phillips argues there was a continuing pattern of misconduct that prejudiced her defense and that double jeopardy would bar a retrial. Both parties cite *State v. Hughes* as providing the applicable standard:

> To prevail on a claim of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." "Reversal on the basis of prosecutorial misconduct requires that the conduct be 'so pronounced and persistent that it permeates the entire atmosphere of the trial.'" To determine whether prosecutorial misconduct permeates the entire atmosphere of the trial, the court necessarily has to recognize the cumulative effect of the misconduct.

193 Ariz. 72, 79 ¶ 26 (1998) (citations omitted). A ruling on a motion to dismiss for prosecutorial misconduct is reviewed for an abuse of discretion. *State v. Trani*, 200 Ariz. 383 ¶5 (App. 2001); *State v. Lee*, 189 Ariz. 608, 616 (1997).

¶34        The purported withholding of evidence assertion appears to be based both on the timing and source of materials that were the subject of Phillips' argument challenging the superior court's denial of her motion to dismiss as a discovery sanction, *see* Section II, as well as other evidence. To the extent it is based on the materials that were the subject of her motion to dismiss, it fails for the grounds set forth above. To the extent it is based on other evidence, as the State suggests, the "gist" of the argument "is not so much that she was denied this material, but that it was disclosed by the prosecutors who tried the case, rather than by those who left the prosecutors' office 3 years before trial began." As noted by the United States Supreme Court, "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). Accordingly, although Phillips raises concerns about disclosures made by prosecutors who left the prosecution team years before trial, she has not shown such conduct had any impact on the fairness of the trial or violated her due process rights.[4]

¶35        Phillips' witness intimidation argument arises out of a claim that State investigators, contrary to a court order, told certain individuals that certain other individuals were connected to the bombing and were the source of related information. This, she argues, resulted in two witnesses recanting prior statements. Before trial, Phillips raised this issue with the superior court, which declined to hold the investigators in contempt, but allowed her counsel to use the pretrial interview, taken before any recantation, for one witness at trial. Although Phillips claims this was "an overt act of misconduct" because it was "a direct violation of a court order that was [put] in place to protect the identities of witnesses so that they would not be threatened or influenced before they testified," the court that issued the order she claims was violated viewed it differently. That court declined to hold the investigators in contempt, instead issuing orders addressing the issue from an evidentiary perspective. Phillips has not shown how this conduct by investigators properly is attributable to the prosecutors; how it means the prosecutors actively discouraged witnesses from testifying or, given the remedial rulings, how it resulted in an unfair trial. *Smith*, 455 U.S. at 219. Nor has she shown that the court abused its discretion in addressing the issue.

---

[4] Phillips' argument regarding the use of grand jury subpoenas by these same prosecutors who did not try the case is addressed, in substance, in Section VIII below, and she has not shown that any such misconduct had any impact in the fairness of the trial.

¶36        The final basis for Phillips' prosecutorial misconduct argument is that a prosecutor, while appearing as counsel on the case, started a consulting business, advertising involvement with the Triano homicide as bolstering his qualifications for solving older, unsolved crimes. Asserting this consultancy "was in direct conflict with a prosecutor's duty to act as a minister of justice," *see* Ariz. R. Sup. Ct. 42, ER 3.8 cmt. 1, Phillips claims that "[t]his intentional misconduct was so egregious that it raises concerns over the integrity and fundamental fairness of the trial itself." Phillips, however, admits that this prosecutor was removed "from the case when defense counsel discovered the conflict" and acknowledges the superior court imposed no sanction because the individual "resigned from the county attorney's office." That resignation occurred approximately three years before trial, and Phillips has not shown how any misconduct associated with this consultancy had any impact on the trial, let alone resulting in an unfair trial. *Smith*, 455 U.S. at 219. For these reasons, Phillips has not shown prosecutorial misconduct resulting in a denial of her due process and fair trial rights and has not shown the court abused its discretion in addressing the issue.

## VI.    The Superior Court Did Not Err In Denying Phillips' Motion To Suppress Recordings Of Her Calls With Young.

¶37        Phillips argues the superior court erred in denying her motion to suppress recordings of her phone calls with Young, which Young recorded and were seized in Florida after his arrest in 2005. At trial, the State introduced portions of the recordings where the two discussed payments Phillips was making to Young. Phillips argues the recordings should have been precluded under 18 U.S.C. §§ 2510, et seq., and Florida Statutes Annotated (F.S.A.) § 934.06. This court reviews the superior court's ruling for an abuse of discretion, analyzing legal conclusions de novo. *Moody*, 208 Ariz. at 445 ¶ 62.

¶38        As applicable here, federal law allows one participant to record a call even if the other does not consent. *See* 18 U.S.C. § 2511(2)(d). This statute, however, prohibits recording if it is "for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." *Id.* Phillips argues that suppression of recordings under federal statutory law is required where a defendant shows by a preponderance of the evidence that the recording was made for an unlawful purpose. *See, e.g., United States v. McTiernan*, 695 F.3d 882, 888 (9th Cir. 2012) (citing cases); *Wasserman v. Low*, 143 Ariz. 4, 10 (App. 1984) (citing cases). By denying her motion to suppress, the superior

court found that Phillips had not made that required showing, a conclusion Phillips has not shown was in error.

¶39            Although Phillips argued the recordings were "created by a 'confidence man' for criminal and tortuous purposes (e.g., fraud, blackmail, and extortion)," she has not shown that the superior court was required to reach that conclusion. To the contrary, on the record presented, that court could have properly concluded that Young made the recordings "'out of a legitimate desire to protect himself and his own conversations from later distortion or other unlawful or injurious uses by the other party.'" *Wasserman*, 143 Ariz. at 10 (quoting *Meredith v. Gavin*, 446 F.2d 794, 798-99 (8th Cir. 1971)). Accordingly, and applying the "case by case" analysis required for such analysis, *Wasserman*, 143 Ariz. at 10, Phillips has not shown that the court admitted the recordings contrary to federal statute.

¶40            Phillips argues, with significant force, that recordings were inconsistent with Florida law, where Young was located when he made the recordings. *See* F.S.A. § 934.03(2)(d) (allowing such recording, as applicable here, only "when all of the parties to the communication have given prior consent"). A related Florida statute provides that no recorded information "may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that information would be in violation of this chapter." F.S.A § 934.06. Accordingly, if this was an appeal from a trial in Florida state court, Phillips would have a strong argument that the recordings were inadmissible under this statute. This trial, however, did not occur in Florida state court.

¶41            From its text, it is uncertain whether the Florida statutory prohibition on admissibility where less than all parties consent to a recording was designed to apply to evidentiary decisions made by courts in other states. The text of the prohibition refers, in part, to "the state," suggesting it is limited to Florida. Although a phrase not used in the prohibition, the statute elsewhere defines "judge of competent jurisdiction" to mean judicial officers "of any court of record having felony jurisdiction of the State of Florida." F.S.A § 934.02(8). Perhaps most significantly, although this prohibition has been in place since 1969, no case has found it applies anywhere other than Florida state court. Nor has Phillips shown how, by statute, Florida could direct that certain evidence was inadmissible in an Arizona court proceeding. *Cf. State v. Willoughby*, 181 Ariz. 530, 542 (1995) (in a criminal case, "[w]hen interpreting nonjurisdictional, substantive statutes . . . , we ordinarily assume the substantive reach of a

law is contained within the territorial borders of the enacting jurisdiction to avoid conflicts with other jurisdictions"). This is particularly true given that the governing rules of evidence are those in the forum state where the trial occurs. *See Cordon v. Cotton Lane Holdings, Inc.*, 173 Ariz. 203, 206 (1992) ("Procedural matters are generally governed by the law of the forum state.") (citing Restatement (Second) of Conflict of Laws § 122 (1971)); *see also State v. Superior Court*, 154 Ariz. 574, 576 (1987) ("[R]ules of evidence are procedural in nature.").

¶42　　　　The cases Phillips cites for arguing what state's law should apply miss the mark. They involve one or more of the following (and, accordingly, are distinguishable): civil claims for money damages, state courts applying that same state's law, personal jurisdiction issues and/or reject the type of relief Phillips seeks here.[5] None of the cases she cites show the superior court erred in admitting the recordings under Arizona evidence law, notwithstanding the Florida statute, in this criminal case tried in Arizona state court. The fact that Young recording his calls with Phillips may have exposed him to criminal prosecution or civil liability under Florida law is not germane to whether the Arizona superior court in this case properly admitted portions of those recordings applying the Arizona Rules of Evidence.

¶43　　　　The Supreme Courts of the United States and Arizona have declared that the issues involving the admissibility of evidence "'depend upon the law of the place where the suit is brought.'" *Ross v. Ross*, 96 Ariz. 249, 251-52 (1964) (quoting *Scudder v. United National Bank*, 91 U.S. 406, 413 (1875)). Phillips has not shown that the rule has changed or that a different rule applies to non-constitutional objections in criminal cases. Accordingly, Phillips has not shown that Florida law precluded the Arizona superior

---

[5] *See Kadoranian by Peach v. Bellingham Police Dept.*, 829 P.2d 1061, 1062, 1068 (Wash. 1992) (affirming summary judgment of dismissal in "a civil action seeking damages allegedly caused by constitutional and statutory violations of the right to privacy"); *State v. Fleming*, 755 P.2d 725, 727 (Or. Ct. App. 1988) (affirming murder and other convictions, noting "[t]he recording was made in Oregon lawfully, and Washington law simply does not apply."); *Stowe v. Devoy*, 588 F.2d 336, 341 (2d Cir. 1978) (affirming denial of petition for writ of habeas corpus; finding 18 U.S.C. §§ 2515, et seq. had no extraterritorial application in another country); *France v. France*, 90 So.3d 860 (Fla. Dist. Ct. App. 2012) (reversing dismissal for lack of personal jurisdiction for claim by Florida resident that North Carolina resident violated Florida law).

court from admitting the recordings. Nor has she shown that the recordings were not properly admitted under Arizona law.

## VII.   The Trial Evidence Was Sufficient To Support The Verdicts.

**¶44**        Phillips argues that insufficient evidence was presented to sustain her convictions generally, as opposed to any deficiency in a particular element of the charges. She asserts the evidence against her was speculative and the inferences to be drawn were ambiguous. In considering claims of insufficient evidence, this court's review is limited to whether substantial evidence supports the verdicts. *State v. Scott*, 177 Ariz. 131, 138 (1993); *see also* Ariz. R. Crim. P. 20(a). Substantial evidence is evidence, viewed in the light most favorable to sustaining the verdict, from which a reasonable person could find a defendant guilty beyond a reasonable doubt. *State v. Roseberry*, 210 Ariz. 360, 368-69 ¶ 45 (2005). If reasonable jurors could fairly disagree about whether evidence establishes a fact at issue, the evidence is substantial. *State v. Rodriguez*, 192 Ariz. 58, 60 ¶ 10 (1998). This court reviews de novo claims of insufficient evidence. *State v. West*, 226 Ariz. 559, 562 ¶ 15 (2011).

**¶45**        Evidence of Phillips' guilt was largely circumstantial. A conviction, however, may be based solely on circumstantial evidence because "the probative value of direct and circumstantial evidence are intrinsically similar" and "the law makes no distinction" as to the weight assigned to each. *State v. Harvill*, 106 Ariz. 386, 391 (1970); *see also State v. Anaya*, 165 Ariz. 535, 543 (App. 1990) ("The substantial evidence required for conviction may be either circumstantial or direct, and the probative value of the evidence is not reduced simply because it is circumstantial."). Here, there was substantial evidence from which the jury could have found that Phillips conspired with Young to kill Triano and that Young undertook the job of carrying out the killing.

**¶46**        The jury heard evidence that, during their contested family court proceedings, Phillips spoke of hiring someone to kill Triano so she could collect on his $2 million life insurance policy. Besides saying she wanted Triano dead, Phillips also said it would be easy for someone to kill him, adding his habits were predictable and that he played golf every day. Other trial evidence included the murder itself; Young's travelling to Tucson in a van later found to contain a shotgun, a list of Triano's acquaintances and family in his handwriting and paperwork from Phillips' divorce; the fact that Young had no known connection to Triano before the murder; Phillips' recovery of proceeds from a life insurance policy on Triano's life and her sending money to Young and Young's demand for

additional sums; their attempts to conceal and disguise payments and Phillips using false names in her dealings with Young. Further evidence included the relationship Phillips developed with Young in Aspen after the divorce, the disguised payments Phillips made to Young after the murder totaling twenty-percent of the $2 million life insurance proceeds she received following Triano's death, and emails and recorded calls between Phillips and Young. Collectively, this evidence would permit a reasonable jury to conclude that Phillips conspired with Young to have Triano killed and Young undertook the job of murdering him at her request.

¶47        Phillips dismisses the evidence as speculative because there was no direct evidence that Young knew how to build a bomb or was the person who placed it in Triano's car. She also argues that because there was no specific evidence that Young was in Tucson on the day of the bombing, the jury could only infer that he was somewhere else. The jury, however, was entitled to draw different inferences from the totality of the evidence, including inferences different than those suggested by Phillips. *See State v. Arce*, 107 Ariz. 156, 161 (1971) ("It [is] the function of the jury to decide what reasonable inferences could be drawn from the evidence."). On this record, there was substantial evidence from which a reasonable jury could have found Phillips guilty beyond a reasonable doubt.

**VIII.    Phillips Has Not Shown The Superior Court Erred In Denying Her Motion To Suppress Evidence Obtained By Grand Jury Subpoenas.**

¶48        Phillips argues the State obtained her banking records in Arizona, Colorado and elsewhere using invalid grand jury subpoena duces tecum, and the superior court erred in finding the subpoenas were not unlawful. The thrust of her argument is that the grand jury subpoenas were required to comply with A.R.S. § 13-4071, and because they did not, the superior court erred in denying her motion to suppress evidence obtained in response to the subpoenas. This court reviews the denial of such a motion to suppress for an abuse of discretion. *See State v. Peterson*, 228 Ariz. 405, 407 ¶ 6 (App. 2011).[6]

_____

[6] The briefs on appeal do not address whether the subpoenas are proper under A.R.S. § 13-1812. Phillips states, in her opening brief on appeal, that the State "should have properly sought search warrants based on probable cause through a magistrate." Having cited no authority for this proposition, however, she has abandoned and waived any such argument. *See, e.g., State*

¶49 The record shows the State used grand jury subpoenas duces tecum to obtain copies of Phillips' bank statements and other transactional records. Phillips' motion to suppress, however, did not assert that the grand jury subpoenas failed to comply with A.R.S. § 13-4071. Phillips did, however, raise the issue in a supplement to the motion to suppress.

¶50 Under A.R.S. § 13-4071, which Phillips cites on appeal, a clerk on request of a county attorney or attorney general "shall" issue a grand jury subpoena "without prior authorization by a grand jury, if all of the following occur:" (1) a grand jury was empaneled at the time of issuance; (2) the county attorney designates the subpoena with the standard identifying grand jury number; (3) the county attorney reports to the grand jury foreperson that the subpoena issued within 10 days of issuance and (4) the county attorney reports to the presiding judge that the subpoena issued within 10 days of issuance. *See* A.R.S. § 13-4071(C)(1)-(4). Although it is undisputed that the first two requirements were met, the State concedes the last two were not. The question, then, is whether the failure to comply with these reporting obligations required the court grant her motion to suppress evidence obtained in response to the grand jury subpoenas duces tecum.

¶51 The out-of-state authority Phillips cites either supports the State's position, *see State v. Reid*, 945 A.2d 26, 30, 35-37 (N.J. 2008) (noting "municipal court subpoena" was improper under New Jersey law, but grand jury subpoena without notice would be proper), or is distinguishable, *see People v. Natal,* 553 N.E.2d 239, 242 (N.Y. 1990) (noting, under New York law, "[i]t is for the court, not the prosecutor, to determine where subpoenaed materials should be deposited"); *People v. Doty*, 929 N.Y.S.2d 464, 468-71 (N.Y. 2011) (trial court granting motion challenging grand jury presentment where witness provided hearsay, which was inadequate under New York law; in alternative discussion, noting subpoena seeking bank records "was akin to an administrative subpoena" that did not comply with notice requirements under federal law). Phillips provides no Arizona authority showing the court was required to grant her motion to suppress.

¶52 The clerk of court, when issuing a subpoena, cannot know whether the reporting obligations, relating to "the fact of the issuance of the subpoena," A.R.S. § 13-4071(C)(3), (4), will later be met, meaning there can be no claim that the subpoenas were improperly issued. As the State notes, A.R.S. § 13-4071 does not specify that grand jury subpoenas are invalid if these reporting obligations are not met, and the statute does not specify a

*v. Bolton*, 182 Ariz. 290, 298 (1995); *MacMillan v. Schwartz*, 226 Ariz. 584, 591 ¶ 33 (App. 2011).

remedy if they are not. Similarly, "[t]he availability of the suppression remedy for . . . statutory, as opposed to constitutional, violations . . . turns on the provisions" of the statute involved, not the "exclusionary rule aimed at deterring violations of Fourth Amendment rights." *United States v. Donovan*, 429 U.S. 413, 432 n.22 (1977). On this record, although it appears the superior court had the discretion to grant Phillips' motion to suppress, it also had the discretion to deny that motion. Accordingly, Phillips has not shown the court erred in denying her motion to suppress evidence obtained by grand jury subpoenas.[7]

## IX. Phillips Has Not Shown The Superior Court Erred In Admitting Young's Recorded Statements Pursuant To The Co-Conspirator Exception To The Rule Against Hearsay.

**¶53** Phillips contends the superior court erred in admitting Young's recorded statements because they were inadmissible under the rule against hearsay. Phillips acknowledges that she failed to timely object or otherwise preserve this issue in the superior court. Accordingly, review is limited to fundamental error. *Henderson*, 210 Ariz. at 567 ¶ 19.

**¶54** Statements that are not hearsay include those made by a defendant's co-conspirator. *See* Ariz. R. Evid. 801(d)(2)(E). As applicable here, a statement offered against an opposing party is admissible as non-hearsay if it "was made by the party's coconspirator during and in furtherance of the conspiracy." *Id.* "The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it." *Id.* "A coconspirator's statements are admissible when it has been shown that a conspiracy exists and the defendant and the declarant are parties to the conspiracy." *State v. Dunlap*, 187 Ariz. 441, 458 (App. 1996) (citation and internal quotations omitted). The superior court has substantial discretion in determining whether this showing has been made; even when such evidence is received over a timely objection, this court "will only reverse if the trial court abused its discretion in determining that statements of a coconspirator met the rule's requirements and were admissible." *Id.*

**¶55** Arguing "the only evidence that could arguably establish an agreement to commit a crime were the payments Phillips made to Young,"

---

[7] Given this conclusion, the court need not and expressly does not address the competing arguments about harmless error and whether the State's conduct was objectively reasonable and in good faith under A.R.S. § 13-3925.

Phillips adds that "there is no independent evidence to indicate that the payments were made for a criminal purpose other than the fact that they discussed the payments in code." This argument is premised on the thought that evidence of a conspiracy must be direct and irrefutable to comply with Ariz. R. Evid. 801(d)(2)(E). Phillips offers no authority supporting that position. To the contrary, direct and circumstantial evidence are treated the same under Arizona law, *State v. Stuard*, 176 Ariz. 589, 603 (1993), and a conspiracy may consist of, and be proven by, circumstantial evidence alone, *State v. Arredondo*, 155 Ariz. 314, 317 (1987) ("Criminal conspiracy need not be, and usually cannot be, proved by direct evidence.").

**¶56**      The record contains circumstantial evidence of the conspiracy above and beyond the payments Phillips made to Young. Along with the murder itself, such evidence included Phillips' statements before the murder that she wanted Triano killed; Young's travelling to Tucson in a van later found to contain a shotgun, a list of Triano's acquaintances and family in his handwriting and paperwork from Phillips' divorce; the fact that Young had no known connection to Triano before the murder; Phillips' recovery of proceeds from a life insurance policy on Triano's life and her sending money to Young and Young's demand for additional sums; their attempts to conceal and disguise payments and Phillips using false names in her dealings with Young. On this record, Phillips has not shown the superior court erred in admitting Young's recorded statements pursuant to the co-conspirator exception to the rule against hearsay, let alone fundamental error resulting in prejudice. *See James*, 231 Ariz. at 493 ¶ 11.

## X.   Phillips Has Shown No Abuse Of Discretion In The Superior Court Limiting Post-Trial Juror Contact Based On A Juror Complaint.

**¶57**      When thanking and discharging the jurors, the superior court told them they were free to discuss the case if they wished to do so, "but if you don't, let people know that, and they will abide by your wishes." The court's staff later informed the court and counsel that the jury had decided not to talk to counsel. The court then personally conveyed the jurors' wishes to counsel. The next week, however, a juror reported to the court that a defense investigator had called her and that when she told him that she did not want to talk to him, the investigator said he would call her back later that week. In response, the court directed counsel to cease having their investigators contact jurors and to seek a hearing with the court before any other juror interviews take place. Phillips argues the court erred in issuing this order, a ruling this court reviews for an abuse of discretion. *State v. Paxton*, 145 Ariz. 396, 397 (App. 1985).

¶58        Phillips argues there was no "indication that the jurors were being harassed or interviewed without their consent." The record before the superior court, however, is to the contrary. The record includes a text exchange between a juror and the court's bailiff, where the juror wrote she had been contacted by a defense investigator who also had been a trial witness. The juror recounted telling the investigator that "I didn't want to talk with anyone" and, when told the court ordered no additional juror contact, the juror responded "Wow, thanks. [The defense investigator] said he would be calling me back this week cuz I wouldn't talk to him today. That feels good. It's a relief for me. No pressure from him." This record properly supports a finding of unwanted contact.

¶59        Phillips also argues she had an implied right to interview jurors pursuant to Ariz. R. Crim. P. 24.1(c)(3). That rule provides various ways juror misconduct may provide a basis for a motion for new trial. It does not, however, provide an unlimited right for post-verdict juror contact. Moreover, case law authorizes the superior court, given the juror's complaint, prohibiting counsel "from contacting jurors without a prior showing of 'good cause' and approval from the court." *State v. Olague*, 240 Ariz. 475, 482 ¶ 23 (App. 2016) (citing *Paxton*, 145 Ariz. at 397). On this record, Phillips has shown no error in the superior court limiting post-verdict juror contact.[8]

## XI.        Phillips Has Shown No Abuse Of Discretion In Prohibiting Questions About Whether Witnesses Had Testified At Young's Trial.

¶60        At Phillips' request, during jury selection, the superior court read the following statement to the prospective jurors:

> You will hear that the co-defendant in this case, Ronald Young, has been previously convicted of the crimes charged. You must not consider this information as evidence of Ms. Phillips' guilt. Ms. Phillips is being tried separately with the evidence the State has determined pertains

---

[8] Phillips also states, with no further elaboration, that the decision on jury contact "was error that violates Phillips' rights to due process, a fair trial, and her right to counsel under the U.S. Const., Amendments 5, 6, and 14 and the Arizona Const., art. 2 §§4 and 24." "Merely mentioning an argument in an appellate opening brief is insufficient" to preserve or raise the issue. *MacMillan*, 226 Ariz. at 591 ¶ 33.

to her. This evidence may differ from that presented at the co-defendant's trial. You are not to speculate about the co-defendant's guilt or how the evidence may have been presented differently. You must base Ms. Phillips' guilt or innocence of the evidence presented in this case only.

The court included a similar statement in the final jury instructions. On appeal, Phillips argues the court erred in informing the jury about Young's convictions.

**¶61** Arizona "has long held that a defendant who invited error at trial may not then assign the same as error on appeal." *Moody*, 208 Ariz. at 453 ¶ 111. Because Phillips specifically requested that the jury be informed of the fact of Young's convictions and did not object to the statement provided to the jury, the invited error doctrine precludes granting relief on this claim. *See State v. Fulminante*, 161 Ariz. 237, 248–49 (1988) (finding no error where defense counsel strategically stipulated to admission of defendant's prior convictions), *aff'd*, 499 U.S. 279 (1991).

**¶62** Phillips also contends the superior court deprived her of the right to present her third-party culpability defense by precluding her from asking any of the defense witnesses about Young's trial and whether they had testified in his defense. She argues this evidence was necessary to show the jury she was presenting a completely different defense than the one presented by Young. In substance, Phillips wanted to present evidence so "her jurors felt that Young had been wrongly convicted." As set forth in the instructions Phillips requested, the jury was instructed by the court not to consider the fact that Young had been convicted in determining her guilt. Further, the jury was specifically instructed that the trial evidence presented may differ from that presented at Young's trial and that the jury was not to speculate about Young's guilt or how the evidence may have been presented differently. Jurors are presumed to follow the court's instructions. *See State v. Newell*, 212 Ariz. 389, 403 ¶ 68 (2006). Accordingly, the superior court properly precluded the presentation of any evidence regarding Young's trial.

## XII.    Phillips Has Not Shown The Superior Court Abused Its Discretion In Denying Her Motion For Mistrial.

¶63       Phillips argues the superior court erred in denying her motion for a mistrial or alternatively to strike testimony and provide a limiting instruction after defense counsel's questioning resulted in a witness making a reference to Young's conviction. The exchange during cross-examination was as follows, with the statement challenged by Phillips highlighted:

> [Phillips' Counsel] Q. Okay. All right. Well, let me -- let me -- let's start a little list here. Given that we are trying to find a suspect, okay, or a person of interest with regard to this -- you know, this investigation?
>
> A. Okay. We are trying to find -- we are trying to find a bomber?
>
> Q. Right.
>
> A. I thought that had already been settled, but--
>
> Q. In 2004, it had already been settled?
>
> A. No. *I thought that case had already been settled in 2009.*
>
> Q. Okay. Well, this is another trial.
>
> A. Oh. I realize that, but now you are talking about a bomber.
>
> Q. Okay. I am talking about a bomber that you were trying, in 2004, to locate when you made that device.
>
> A. Okay. I'm not quite following your questioning, but proceed.
>
> Q. In 2004, when you made that device, did you know who did this?

A. No, I did not.[9]

(Emphasis added.) Phillips argues the statement "that case had already been settled in 2009" is a "highly prejudicial statement" "referring to Young's conviction," meaning the court erred in denying her motion for mistrial or, alternatively, to strike and provide a curative instruction.

¶64        The State contends Phillips' argument should be rejected under the invited error doctrine because the testimony was elicited by defense counsel. A review of the record finds no indication that defense counsel sought to develop the answer provided. Instead, it appears the testimony was unexpectedly volunteered by the witness due to confusion about the question. Under these circumstances, the invited error doctrine does not apply. *See State v. Lucero*, 223 Ariz. 129, 135 ¶ 18 (App. 2009) (cautioning against apply the invited error doctrine "unless the facts clearly show that the error was actually invited by the appellant").

¶65        Declaring a mistrial is "the most dramatic remedy for trial error and should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Dann*, 205 Ariz. 557, 570 ¶ 43 (2003). In determining whether to grant a mistrial, the court should consider whether the testimony called the jurors' attention to matters that they would not be justified in considering in reaching a verdict and the probability under the circumstances that the testimony influenced the jurors. *State v. Bailey*, 160 Ariz. 277, 279 (1989). Review for a trial court's denial of mistrial is for abuse of discretion. *State v. Jones*, 197 Ariz. 290, 304 ¶ 32 (2000).

¶66        As applied, the superior court could reasonably conclude the brief statement would not influence the jury. As noted above, *see* Section XI, at Phillips' request, the superior court told prospective jurors that Young "has been previously convicted of the crimes charged," that jurors "must not consider this information as evidence of Ms. Phillips guilt," must "not speculate about the co-defendant's guilt or how the evidence may have been presented differently" and must determine her "guilt or innocence on the evidence presented in this case only." The court also gave a similar

---

[9] In her reply brief on appeal, Phillips seeks to rely on an additional statement by this same witness that she alleges was "a non-responsive answer." By failing to press that issue in her opening brief, it is too late for Phillips to do so in her reply. *See State v. Guytan*, 192 Ariz. 514, 520 ¶ 15 (App. 1998); *see also Moody*, 208 Ariz. at 452 ¶ 101 n.9. Even considering that additional statement, however, would not alter the analysis here.

statement to the jury in final instructions. Jurors are presumed to follow the court's instructions. *See Newell*, 212 Ariz. at 403 ¶ 68. Accordingly, Phillips has shown no abuse of discretion in the denial of her motion for mistrial or her motion to strike and give a curative instruction.

## XIII. Phillips Has Shown No Error Regarding The Assessment Of Attorneys' Fees.

¶67     At sentencing, the superior court ordered Phillips to pay $35,000 in attorneys' fees pursuant to A.R.S. § 11-584. Phillips argues this assessment must be vacated because the court failed to make specific factual findings, including that she has the financial resources to make the payment and that she is able to pay the amount ordered without incurring substantial hardship. *See State v. Taylor*, 216 Ariz. 327, 334 ¶ 25 (App. 2007). Because Phillips did not object to the assessment of attorney fees in the superior court, review is limited to fundamental error. *Henderson*, 210 Ariz. 561, 567 ¶ 19.

¶68     By statute, a superior court may order a defendant to "repay to the county a reasonable amount to reimburse the county for the cost of the defendant's legal defense." A.R.S. § 11–584(C)(3). When "determining the amount and method of payment the court shall take into account the financial resources of the defendant and the nature of the burden that the payment will impose." A.R.S. § 11–584(D). The failure of the court to make specific findings or to consider defendant's ability to pay does not rise to the level of fundamental error. *State v. Moreno-Medrano*, 218 Ariz. 349, 353 ¶ 14 (App. 2008); *see also Trantor v. Fredrikson*, 179 Ariz. 299, 300-01 (1994) ("Although findings of fact and conclusions of law are certainly helpful on appellate review, they do not go to the foundation of the case or deprive a party of a fair hearing."). Nor has Phillips shown the court could not have assessed the fees imposed pursuant to A.R.S. § 11-584. Thus, Phillips has failed to show fundamental error resulting in prejudice regarding the award of attorneys' fees.

## XIV. Phillips Has Shown No Error In The Superior Court Partially Precluding Testimony Of Kelly Goldsmith.

¶69     Phillips argues the court erred in precluding Kelly Goldsmith from testifying to statements she made to the prosecutor regarding her opinions after reviewing Young's financial records. This court reviews a ruling on the admissibility of evidence for an abuse of discretion. *Escalante–Orozco*, 241 Ariz. at 274 ¶ 51.

¶70          In 2007, Goldsmith, a certified fraud examiner, was asked to review Young's ledgers and bank records as part of the murder investigation. After doing so, Goldsmith met with the prosecutor and expressed certain opinions. The prosecutor ultimately decided not to call her as a trial witness, instead using a different financial analyst at trial. During trial, Phillips informed the court that she intended to call Goldsmith to testify regarding her conversations with the prosecutor. Phillips asserted she was entitled to show the jury that Goldsmith's inability to opine that she paid Young for killing Triano was the reason the prosecutor elected to use a different financial analyst at trial. The State objected, arguing Goldsmith's conversations with the prosecutor were hearsay and work product. The court sustained the objection, ruling Phillips could question Goldsmith about her opinions regarding the financial records and payment, but could not ask about her conversations with the prosecutor.

¶71          Although the superior court based its ruling on the work product doctrine, this court need not reach that issue because the proposed testimony is inadmissible hearsay. *State v. Carlson*, 237 Ariz. 381, 387 ¶ 7 (2015) (noting this court will uphold a ruling if it is correct for any reason). Goldsmith's out of court statements to the prosecutor, offered for the truth of the matter asserted, were hearsay. Ariz. R. Evid. 801(c). Unless admissible pursuant to an exception to the rule against hearsay, hearsay is inadmissible to prove the truth of the matter asserted. Ariz. R. Evid. 801(c), 802. Here, Phillips sought to introduce Goldsmith's out-of-court statements to the prosecutor to show "Goldsmith agreed with the defense theory that Young's ledgers were as likely proof of a fraud by him than they were evidence of a payment scheme in a murder for hire." Thus, the proposed testimony was hearsay, and no exception to the rule against hearsay is argued by Phillips to support its admission.

¶72          Contrary to Phillips' contention, the superior court did not impermissibly prevent her from presenting any admissible evidence relevant to her defense. As the court made clear, Phillips was not precluded from eliciting from Goldsmith whatever opinions she may have formed regarding her review of Young's financial records; it was only her hearsay statements to the prosecutor that were inadmissible. Indeed, Phillips had Goldsmith testify that based on her review of the records and she could not make any conclusion as to why those transactions were going back and forth between Young and Phillips. On this record, Phillips has shown no reversible error by precluding the admission of Goldsmith's hearsay statements.

**XV.    Phillips Has Not Shown The Superior Court Erred In Denying Her Motions To Dismiss Or Vacate Judgment Based On Her Arguments That The State Rendered Her Indigent.**

**¶73**        Phillips argues the superior court erred in denying her motion to vacate judgment. The motion raised a variety of claims for relief, but Phillips limits her argument on appeal to a claim of a denial of her Sixth Amendment right to counsel of choice. Relying on the plurality in *Luis v. United States*, 136 S. Ct. 1083 (2016), Phillips argues "the State deliberately delayed extraditing [her] until after a civil suit had been filed against her, a TRO based on A.R.S. § 13-2314.04(B) freezing her assets had been entered, a $10,000,000 judgment had been entered in the civil suit and she lost her $4,000,000 home to foreclosure," thereby denying "her Sixth Amendment right to counsel of her choice."

**¶74**        The *Luis* plurality held the *government's* pretrial seizure of legitimate, untainted assets to secure a potential forfeiture violates the Sixth Amendment where those assets are needed to retain counsel of choice. *See* 136 S. Ct. at 1088. The *Luis* plurality made plain that its analysis was what "the Government" could, and could not, do in seizing assets of a criminal defendant in a way that the defendant claimed "prevents her from paying her lawyer" of choice. *Id.* at 1087. Unlike *Luis*, however, in this case, the government did not seize Phillips' assets. Instead, plaintiffs in a civil wrongful death suit arising out of Triano's murder obtained the assets, making *Luis* inapplicable. *See Estate of Lott v. O'Neill*, 165 A.3d 1099 (Vt. 2017) (limiting *Luis* to government seizure of defendant's assets). Phillips cites no authority applying the *Luis* plurality in a context similar to this case.

**¶75**        To the extent Phillips argues a delay in her prosecution from filing to her extradition resulted in her indigency, that claim overlooks the fact that Phillips was not prohibited from voluntarily returning to face the charges. Phillips' own conduct –- in deciding to remain in Europe and return only after being extradited –- not the State's conduct, resulted in the delay. As a result, Phillips has failed to show the State improperly rendered her indigent.

**CONCLUSION**

¶76      For the foregoing reasons, Phillips' convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA